UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

TURBINE POWERED TECHNOLOGY, LLC          CIVIL ACTION NO.: 6:20-cv-00986

VERSUS                                                            HONORABLE:  MICHAEL JUNEAU

DAVID CROWE, KENNETH BRACCIO,            MAGISTRATE: CAROL WHITEHURST
DANIEL FOLEY, GEORGE JACKSON,
KENT ELLSWORTH, ARIZONA TURBINE
TECHNOLOGY, LLC, ARIZONA TURBINE
TECHNOLOGY, INC., ADVANCED TURBINE
SERVICES, LLC & TURBINE INTEGRATED
POWER SYSTEMS, LLC
*****************************************************************************

## MEMORANDUM IN SUPPORT OF MOTION TO REMAND ON BEHALF OF PLAINTIFF, TURBINE POWERED TECHNOLOGY, LLC

Respectfully submitted:

THE PANAGIOTIS FIRM

*s/D.C. Panagiotis*

_____

D.C. PANAGIOTIS (#15032)
1540 W. Pinhook Rd.
Lafayette, LA 70503
(337) 264-1516
dan@panalaw.com
**Counsel for Plaintiff, Turbine Powered
Technology, LLC**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| TURBINE POWERED TECHNOLOGY, LLC | CIVIL ACTION NO.: 6:20-cv-00986 |
| VERSUS | HONORABLE:  MICHAEL JUNEAU |
| DAVID CROWE, KENNETH BRACCIO, DANIEL FOLEY, GEORGE JACKSON, KENT ELLSWORTH, ARIZONA TURBINE TECHNOLOGY, LLC, ARIZONA TURBINE TECHNOLOGY, INC., ADVANCED TURBINE SERVICES, LLC & TURBINE INTEGRATED POWER SYSTEMS, LLC | MAGISTRATE: CAROL WHITEHURST |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **TABLE OF CONTENTS**

Table of Contents ...................................................................................... i

Cases ....................................................................................................... ii

Citations .................................................................................................. v

A. "IT'S LIKE DÉJÀ VU ALL OVER AGAIN" .................................................... 2

B. THE LONG AND WINDING ROAD ........................................................... 3

1. In the beginning there was:  *TES v. TPT* ................................................. 4

2. Docket No. 130379 ............................................................................ 6

3. Preliminary Injunction ..................................................................... 11

4. Same Song, Different Chorus .............................................................. 12

5. Amended Petition for Damages ........................................................... 13

6. Motion to Dissolve Preliminary Injunction ............................................. 14

7. But I will wear my heart upon my sleeve for …  I am not what I am .... 19

8. The wheels on the bus go round and round ............................................. 21

9. How do I love thee?  Let me count the ways ........................................... 24

10. "They cannot take away our self-respect if we do not give it to them" .25

11. Reprisal! "The wheels on the bus go round and round".........................25

12. "And now for something completely different".......................................27

13. "Stop in the name of love"....................................................................... 29

C. LAW AND ARGUMENT........................................................................... 30

   1.  Knowledge of the Defendants ................................................. 31

   2.  Multiple Removals on the same Facts are not Allowed ........................33

   3.  The Third Removal is Untimely.............................................................37

      a.  § 1446(b) ....................................................................................... 38

      b.  28 USC § 1454(b)(2) ...................................................................... 46

NO FEDERAL QUESTION ................................................................................... 49

**Cases:**

*Acorne Products, LLC v. Tjeknavorian*, 33 F. Supp. 3d 175,
182-83 (E.D. NY 2014) ........................................................................................ 51

*Acuna v. Brown & Root, Inc.*, 200 F. 3d 335, 339 (5th Cir. 2000) ...................... 30

*Allen v. Frank Janes Co.*, 142 La. 1056, 78 So. 115 (1918) ...................................32

*Anderson v. Bank of America*, 2010 U.S. Dist. Lexis 1540
(S.D. Miss. 1/6/10) at p. 4.................................................................................. 31

*Andrews v. Daughtry*, 994 F. Supp. 2d 728, 735 (MDNC 2014) ................... 47-48

*Autoskill v. National Educational Support Systems, Inc.*,
994 F. 2d 1476, 1496-98 (10th Cir. 1993)............................................................... 51

*Barber v. Testa*, 331 So. 2d 139, 140 (La. App. 3d Cir. 1976) ..............................32

*Briar Patch, Ltd., LP v. Phoenix Pictures, Inc.*, 373 F. 3d 296,
305-06 (2d Cir. 2004) ......................................................................................... 51

*Brown Bag Software v. Symantec Corp.*, 960 F. 2d 1465, 1475-77
(9th Cir. 1992) .......................................................................... 51

*Carpenter v. Wichita Falls Independent School District*,
44 F. 3d 362, 365 (5th Cir. 1995) ........................................ 30

*Computer Associates International, Inc. v. Altai, Inc.*,
982 F. 2d 693, 717 (2d Cir. 1992) ........................................ 51

*Feist Publications, Inc. v. Rural Telephone Service Company*,
499 U.S. 340, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991) ........................................ 49

*Freeman v. Treen*, 442 So. 2d 757, 761 (La. App. 1st Cir. 1983) ........................... 25

*Gates Rubber Co. v. Bando Chem. Indus.*, 9 F 3d 823 (10th Cir. 1993)........... 49-50

*Griffin v. Lee*, 621 F. 3d 380, 388 (5th Cir. 2020) ............................................... 30

*Hill Country Trust v. Silverberg*, 2018 U.S. Dist. Lexis 22359
(W.D. Tex. 11/26/18) .................................................................44, 46-48

*Howery v. Allstate Insurance Company*, 243 F. 3d 912, 916 (5th Cir. 2001) ...... 30

*Kindrid Hospitals Ltd. Partnership v. Aetna Life Insurance Co.*,
2018 U.S. Dist. Lexis 150725 (N.D. Tex. 9/5/18) .................................................35

*Knight v. State*, No. 17-0462 (La. App. 3d Cir. 12/13/17),
2017 La. App. Unpub. Lexis 383 at p. 9 .................................................32

*Link v. Wabash RR Co.*, 370 U.S. 626, 633,
82 S. Ct. 1386, 8 L. Ed. 2d. 734 (1962) .................................................32

*Marseilles Homeowners Condo Assoc. v. Fontenell*, 2008 U.S. Dist. Lexis 21850
(E.D. La. 3/18/08) .......................................................... 36-37

*Perez v. Stephens*, 784 F. 3d 276, 283 (5th Cir.  2015) .......................................... 31

*Pioneer Inv. Servs Co. v. Brunswick Assoc. Ltd. Partnership*,
507 U.S. 380, 396, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993) ................................32

*Pryor v. U.S. Postal Service*, 769 F. 2d 281, 289 (5th Cir. 1985) ...........................32

*Ryan v. Calcasieu Parish Police Jury*, 2019 U.S. Dist. Lexis 137990
(W.D. La. 5/28/19) .................................................................33

*Ryan v. Calcasieu Parish Police Jury*, 2019 U.S. Dist. Lexis 137729
(W.D. La. 8/13/19) .................................................................. 34

*Salts v. Epps*, 636 F. 3d 468, 474 (5th Cir. 2012) ................................................... 47

*Shearer v. Southwest Service Life Insurance Co.*, 516 F. 3d 276, 278
(5th Cir. 2008) ....................................................................................................... 30

*Sleppin v. Thinkscan.com, LLC*, 55 F. Supp. 3d 366 (E.D. NY 2014) .................. 51

*SnoWizard, Inc. v. Andrews*, 2013 U.S. District Lexis 97589
(E.D. La. 7/12/13) at p. 6 ...................................................................................... 47

*S.W.S Erectors, Inc. v. Infax, Inc.*, 72 F. 3d 489, 492 (5th Cir. 1996) ................... 33

*TES v. TPT* litigation, No. 14-01868 ............................................................. 4-5, 14

*Tierney v. Unum Life Insurance Co. of America*, 2001 U.S. Dist. Lexis 15451
(N.D. Tex. 9/8/01) ................................................................................................. 36

*Tucson Embedded Systems v. Turbine Powered Tech., LLC*,
No. CV-14-01868, 2015 U.S. Dist. Lexis 192879 (Dist. Az. 11/24/15) .................... 5

*Tucson Embedded Systems v. Turbine Powered Technology, LLC*,
No. CV-14-01868-TUC-BGM, 2016 U.S. Dist. Lexis 44696
(Dist. Az.  3/31/16).......................................................................................... 4, 5, 14

*Turbine Powered Tech., LLC v. Crowe*, No. 17-0801,
2018 U.S. Dist. Lexis 29806 (W.D. La. 2/14/18) ........................ 2, 3, 20, 22, 37, 43

*Turbine Powered Tech., LLC v. Crowe*, No. 17-0801
(2018 U.S. Dist. Lexis 29800 (W.D. La. 2/23/18) .................................................... 2

*Turbine Powered Tech., LLC v. Crowe*, No. 19-0475,
2019 U.S. Dist. Lexis 14634 (W.D. La. 8/12/19) ............................................... 3, 24

*Turbine Powered Tech., LLC v. Crowe*, No. 19-0475,
2019 U.S. Dist. Lexis 145950 (W.D. La. 8/26/19) ................................................... 3

*Turbine Powered Tech., LLC v. Crowe (In Re: Crowe)*,
No. 19-ap-00260-BMW, 2020 Bankr. LEXIS 2084 at p. 5-6........................... 6, 28

*Turbine Powered Tech, LLC v. Crowe*, No. 2018-0881
(La. App. 1st Cir. 9/5/19), 2019 La. App. Lexis 1522 ............................................ 25

Case No. 19-bk-04406-BMW ................................................................................ 27

Case No. 19-ap-00260-BMW ..........................................................................6, 27

*University of Kentucky Research Foundation, Inc. v. Niadyne, Inc.,*
2013 U.S. Dist. Lexis 158018 (E.D. Ky. 11/5/13) at p. 10 ................................. 47-48

*Washington v. Riley,* 2014 U.S. Dist. Lexis 33726
(W.D. La., Lafayette Division, 3/11/14) ......................................................... 36-37

*XIP, LLC v. CommTech Sales, LLC,* 2015 U.S. Dist. Lexis 149174
(N.D. Tex. 11/3/15) ........................................................................ 39, 41-44, 46-47

**Citations:**
28 USC § 1447(c)........................................................................................... 1

28 USC § 1454(d) .......................................................................................... 1

28 USC § 1454(a) .......................................................................................... 2

La. Code of Civ. P. Art. 3612 ........................................................................25

28 USC § 1331 ............................................................................................. 29

28 USC § 1338............................................................................................. 29

28 USC § 1441 ............................................................................................. 29

28 USC § 1446........................................................................................ 29, 38, 47

28 USC § 1454....................................................................19, 29, 38, 43, 47, 49

28 USC § 1446(b)(3) ................................................................................ 29, 38

Federal Copyright Act 17 USC § 301(a) .................................................... 29

Chemical Facility Anti-Terrorism Standards, 6 USC § 622, et. seq. ................... 34

Employee Retirement Income Security Act of 1974, 29 USC § 1001, et. seq... 35-36

28 USC § 1446(b) .................................................................................... 37-38

28 USC § 1446(b)(1) ................................................................................... 38

§ 1454(b)(2) ............................................................................................ 38, 46

United States Copyright Act ...................................................... 29, 39, 45, 50-52

FRCP 54(b) ................................................................................................6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

TURBINE POWERED TECHNOLOGY, LLC        CIVIL ACTION NO.: 6:20-cv-00986

VERSUS                                 HONORABLE:  MICHAEL JUNEAU

DAVID CROWE, KENNETH BRACCIO,          MAGISTRATE: CAROL WHITEHURST
DANIEL FOLEY, GEORGE JACKSON,
KENT ELLSWORTH, ARIZONA TURBINE
TECHNOLOGY, LLC, ARIZONA TURBINE
TECHNOLOGY, INC., ADVANCED TURBINE
SERVICES, LLC & TURBINE INTEGRATED
POWER SYSTEMS, LLC
*******************************************************************************

## MEMORANDUM IN SUPPORT OF MOTION TO REMAND ON BEHALF OF PLAINTIFF, TURBINE POWERED TECHNOLOGY, LLC

MAY IT PLEASE THE COURT:

Turbine Powered Technology, LLC (TPT) respectfully asks this Court to remand this cause to the 16th Judicial District Court, Parish of St. Mary, state of Louisiana, pursuant to 28 USC § 1447(c) and 28 USC § 1454(d).  Remand is required because the underlying state court action does not present questions of federal law, the defendants did not file for removal timely, and under the circumstances of this case, multiple removals are prohibited.

Having failed on two previous attempts to remove this case, along with three previous collateral attacks, all known to this Court, defendants, Advanced Turbine Systems, LLC (ATS) and Kenneth Braccio would now represent that for the first time in 6 years of litigation has TPT "finally" made clear its claims of having trade secrets in the computer source code for the digital controllers programmed by Tucson Embedded Systems, Inc. (TES) and used with TPT's oilfield fracking and power generation equipment.  As the Court will see, defendants have had notice of TPT's claims for years;

1

references to computer code and software have been made from the beginning and defendants' counsel have referred to copyrights in court hearings in 2017. Consequently, their arguments have no merit.

### A. "IT'S LIKE DÉJÀ VU ALL OVER AGAIN"[1]

This is the third time that defendants have sought to remove this case from state court. This Honorable Court is thoroughly familiar with the factual and procedural background of this case, and related cases, having rendered rulings on numerous occasions, and recommending remand two times before.

This Court reviewed the instant matter the first time in 2017-2018. That was in conjunction with defendants' first removal attempt which was based on alleged diversity jurisdiction and pursuant to 28 USC § 1454(a), upon defendants alleging that the case involved a claim for Patent violations. After an exhaustive review of the facts at that time and the preceding procedural events, this Court held that there was complete diversity of citizenship lacking and there was no application or interpretation of federal law arising from TPT's claims in their "well pleaded complaint" filed originally in the 16th Judicial District Court. This Court recommended remand. *Turbine Powered Tech., LLC v. Crowe*, No. 17-0801, 2018 U.S. Dist. Lexis 29806 (W.D. La. 2/14/18)(*Turbine I*). The Court's Rulings and Recommendations were adopted and affirmed by the District Court and the case was remanded to St. Mary Parish. *Turbine Powered Tech., LLC v. Crowe*, No. 17-0801 (2018 U.S. Dist. Lexis 29800 (W.D. La. 2/23/18).

This Court reviewed this case for the second time in 2019. *Turbine Powered Tech.,*

---

[1] "Attributed to Yogi Berra, Major League Baseball Hall of Fame Inductee in 1972 and known for homespun colloquialisms like: "I never said most of the things I said" and "When you come to a fork in the road, take it."

_LLC v. Crowe_, No. 19-0475, 2019 U.S. Dist. Lexis 14634 (W.D. La. 8/12/19)(_Turbine II_).
Once again the factual and procedural backgrounds of the case were extensively
recounted in the Court's Rulings and Recommendations up until the time of the second
removal, which was when defendant David Crowe filed for personal bankruptcy under
Chapter 11 of the United States Code in the State of Arizona.[2]

After painstakingly sifting through the claims and allegations made by TPT in state
court, this Court found that the balance of factors "overwhelmingly" supported equitable
remand back to state court and recommended the same. (_Turbine II_, _supra_).  This Court's
Rulings and Recommendations were reviewed and affirmed by the District Court and the
case was remanded for a second time to the 16th JDC.  _Turbine Powered Tech., LLC v._
_Crowe_, No. 19-0475, 2019 U.S. Dist. Lexis 145950 (W.D. La. 8/26/19).

For conservation of time and resources, TPT hereby incorporates the factual and
procedural findings of this Court in _Turbine I_ and _Turbine II_.  The state court record is
the same as previously filed with the court up through the time of remand in August, 2019.
Accordingly, TPT will only supplement the record to fill in certain gaps regarding
references to software, computer code, source code, data, Intellectual Property (IP)
embedded in source code and events since the second remand.

## B. THE LONG AND WINDING ROAD...[3]

The defendants have removed this case for the third time since 2017 now claiming
the Court has jurisdiction because the protection of "copyrights" has been made an issue
in this case.  Defendants claim that because of certain discovery responses in July, 2020

---

[2] Since that time co-defendants, Arizona Turbine Technology, Inc. and Arizona Turbine Technology, LLC
have also filed for bankruptcy protection in Arizona.  Civil Action No. 19-bk-15914-BMW .

[3] Songwriters John Lennon and Paul McCartney (1970), Copyright Lic. Sony/ATV Music Publishing, LLC.

and a recent ruling by the Bankruptcy Court in Arizona, that it has become "clear for the first time" that "copyright issues" are involved in this case.  Defendants claim they had no notice of any potential issues involving computer code and software, which presumably are copyrightable, until they received those discovery responses in July, 2020.  From the beginning of litigation between the parties, however, the facts show something completely different.

### 1.  <u>In the beginning there was:  TES v. TPT</u>

While serving as the CEO of Tucson Embedded Systems, Inc. (TES), David Crowe initiated suit against TPT in the United States District Court for the District of Arizona in 2014. <u>*Tucson Embedded Systems v. Turbine Powered Technology, LLC,*</u> No. CV-14-01868-TUC-BGM, 2016 U.S. Dist. Lexis 44696 (Dist. Az.  3/31/16).  TES filed the lawsuit alleging breach of contract based on Turbine's alleged failure to pay amounts owed for the Industrial Digital Engine Controllers (IDECs) manufactured by TES.  TPT filed a counter-claim in that suit alleging that its trade secrets were a "*compilation* consisting of the parameters and settings, including timing, temperatures, flow rates, horsepower settings, pressures, warning protocols and shutdown protocols", necessary to make a turbine engine run on field gas drive a 1 mw generator in oil and gas industry applications. (Emphasis added)  <u>*Id.*</u> at p. 5.[4]  Part of that claim was that TES misappropriated "proprietary data and attempted to then charge TPT for the use of its own data, and the *source code* which TPT co-developed." (Emphasis added).  <u>*Id.*</u> at p. 13.  In that same lawsuit David Crowe testified that "TES will gladly agree to never develop, market, or sell products for industrial use of a T-53 engine... [and that] the information Turbine provided

---

[4] Page references are to the slip opinion page numbers preceded by an asterisk in all LEXIS citations.

to TES has never been used for any other purpose *except to be incorporated into the software for the IDECs developed for Turbine's T-53 engines.*" (Emphasis added). *Id.* at p. 17-18. That litigation made it clear, and the Court found, that Turbine had provided confidential information for the T-53 to TES "for the purpose of [it] being used in the *software* for the IDECs." (Emphasis added). *Id.* at p. 18.

During the course of the litigation, the parties battled furiously over the discovery of the software and the "source code" that TPT contended contained its trade secrets. *Tucson Embedded Systems v. Turbine Powered Tech., LLC,* No. CV-14-01868, 2015 U.S. Dist. Lexis 192879 (Dist. Az. 11/24/15). The Court ultimately ruled in favor of TPT and ordered that the source code be produced pursuant to a Protective Order. *Id.* at p. 11-12.

TES ultimately brought a Motion for Partial Summary Judgment on the issue of the trade secrets. The Court found:

> Based upon the evidence put forth by Turbine, it would appear that it has invested significant time and resources to develop the T-53 for oil and gas industry applications; however, Turbine has failed to provide enough detail about the alleged trade secrets for TES or this Court to adequately discern what might be legally protectable.

> (In footnote 5), The Court acknowledges that Mr. Green (TPT's expert) sets forth Turbine's purported trade secrets in a spreadsheet attached to his Declaration; however, ***any potential secret is embedded in software code*** and as such its identity is undecipherable.

2016 U.S. Dist. Lexis 44696 at p. 26-27 and fn 5. (Emphasis added). After the Court issued its ruling on March 31, 2016, additional discovery ensued and TPT discovered that the correct version of the source code may not have been afforded to its expert at the time of the Motion for Partial Summary Judgment. In July, 2016 TPT filed a Motion to Compel and for Sanctions alleging that TES (through Mr. Crowe) had failed to comply with the previous Order of the Court requiring TES to produce certain variations, including the

final version, of the subject software source code and TPT asked the Court to reopen discovery. The District Court heard oral argument on the motion in October, 2016.  Before issuing a ruling, however, TES and TPT settled their litigation.

That settlement agreement stated that "TES owns the hardware and software platform for the IDEC" and that "TPT owns the intellectual property with regard to tuning the IDEC developed for the specific purpose of controlling industrialized turbine engines for use in the oil and gas industry", which intellectual property "includes gas turbine engine operating and protected parameters provided to TES that were necessary to run the subject engines in industrial applications." *Turbine Powered Tech., LLC v. Crowe (In Re: Crowe)*, No. 19-ap-00260-BMW, 2020 Bankr. LEXIS 2084 at p. 5-6.

Because of the settlement, the Order on the Motion for Partial Summary Judgment was not made final.[5]  The entire litigation was dismissed "without prejudice" on December 21, 2016.  (**Exhibit P-1).**

### 2.  Docket No. 130379

TPT filed its Original Petition in the 16th JDC, Parish of St. Mary, State of Louisiana, No. 130379 on November 7, 2016. (Rec. Doc. 1-4 pp. 27-88). Paragraphs 27-34 of the Original Petition discuss in detail that defendant, ATS, had agreed to supply TPT with digital controls for turbine engines, known as FADEC or IDEC and that ATS did provide digital engine controls to TPT either directly or through TES all governed under a Vendor Agreement which was attached to the Petition.

Paragraph 41 of the Petition states:

**The Vendor Agreement expressly provides: "With respect to all**

---

[5] Pursuant to FRCP 54(b):  "Otherwise, any order or decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of the judgment adjudicating all the claims…"

> **changes or modifications paid for and/or funded by TPT under**
> **this Agreement, TPT shall own all "Intellectual Property".**
> [Emphasis original].  FN.  TPT did pay for and fund modifications to the
> engine controllers during the terms of the Vendor Agreement.  The Vendor
> Agreement expressly provided that ATS was not responsible for
> modifications to the digital engine controller.  Under these express terms,
> TPT was the sole owner of all ***integration information*** that it had
> developed which allowed the digital engine controller to actually run a
> turbine engine in a frac application.

(Emphasis added).  In the footnote to that paragraph, the Vendor Agreement was quoted

in pertinent part:

> With respect to all changes or modifications paid for and/or funded by TPT
> under this Agreement, TPT shall own all "intellectual property" which shall
> be defined as:  All confidential or proprietary information, inventions, ideas,
> trade secrets, data, materials, know-how, patents, design patents, patent
> and design applications, registered designs, ***copyrights***, schematics,
> engineering drawings and all similar rights."

(Rec. Doc. 1-4 at p. 34); *Footnote 6* to TPT's Petition quoting Article XII of the Vendor

Agreement. (Emphasis added).  Paragraphs 43-44 of the Petition allege that none of the

defendants had any rights to the intellectual property arising from the "modifications"

performed pursuant to the Vendor Agreement and that TPT was the sole owner of the

intellectual property created by the "modifications" to the engine controllers.  Paragraphs

57-58 of the Petition allege that David Crowe, as manager of Arizona Turbine Technology,

unlawfully misappropriated TPT's intellectual property "to wit:  digital engine control

modifications developed pursuant to and during the term of the Vendor Agreement" and

that defendants, AZT, Crowe and Braccio claimed that they owned the technology

represented by those "modifications".  Paragraph 62 of the Original Petition sums up the

claim for intellectual property derived from modifications to the engine controls in

pertinent part:

> Petitioner avers that a present, actual, justifiable, and substantial
> controversy exists of sufficient immediacy between the parties as to (1)

7

whether AZT through Crowe and/or Braccio and/or Foley illegally appropriated the intellectual property derived from **_modifications to engine control software_** sold by TES and ATS to TPT under the Vendor Agreement for turbine powered hydraulic fracturing equipment."

(Rec. Doc. 1-4 at p. 38; emphasis added).

In Paragraph 108 of the Petition, TPT stated that its trade secrets consisted of "design, manufacture, and controls for TPT's turbine powered hydraulic fracturing pumping equipment (the "frac equipment"). Specifically, such trade secrets include but are not limited to _formulas, patterns, compilations,_ **_programs,_** _methods, techniques and processes_ invented and developed by TPT to control turbine engines used in the hydraulic fracturing business for stimulation in oil and gas wells." (Rec. Doc. 1-4 at p. 46; emphasis added).

Count XIII of the Original Petition requested Injunctive Relief stating in pertinent part:

> ... (TPT) requests that this Court issue a Temporary Restraining Order, and after notice and hearing a Preliminary Injunction, to enjoin and restrain each of the Defendants and their agents, servants, employees, attorneys and all persons in active concert and in participation with them, for a period of ten (10) days from the date hereof from:
>
> (b) The use or conveyance of any and all licenses related to **_software_** and/or hardware for industrial turbine engine controls for T-55 and TF-40 engines, particularly for use in hydraulic fracturing equipment.
>
> (c) **_Copying_**, selling, alienating, transferring, and/or providing goods or services for digital engine controls for turbine-powered hydraulic fracturing equipment ...
>
> (j) Sales, transfers, and/or use of hydraulic fracturing equipment and related **_computer programs related to or derived from TF-40 or TF-55 digital control systems_**...
>
> (m) Use, sale, transfer and/or disclosure of any **_information_**, goods, and/or services which contain or are based on the TF-40 and/or T-55 turbine engine **_digital controls_**...

8

(Rec. Doc. 1-4 at pp. 58-60; emphasis added).

On that same date TPT filed an Application for Temporary Restraining Order & for Preliminary Injunction in the 16th JDC. (Rec. Doc. 1-4 at pp. 89-107). That pleading references TPT's Original Verified Petition and the Vendor Agreement.  Paragraph 3 of that Application specifically alleges that ATS sold and TPT purchased "digital engine controls" for which "TPT shall own all Intellectual Property".  In a footnote to that paragraph, Section XII of the Vendor Agreement is once again reproduced defining intellectual property as "all confidential or proprietary information, inventions, ideas, trade secrets, data, materials, know-how, patents, design patents, patent and design applications, register designs, *copyrights*, schematics, engineering drawings and all similar rights.  (Rec. Doc. 1-4 at p. 90; emphasis added).

Paragraph 7 of the Application pertains to ATS and Braccio and states:

TPT and defendant Advanced Turbine Services ("ATS" which is owned and managed by Ken Braccio) executed a Vendor Agreement on October 4, 2011. ATS agreed to sell, and TPT agreed to buy TF-40 and T-55 engines and hardware for digital engine controls.  The agreement expressly provided TPT owned all of the resultant intellectual property.  This included the engine controls data which TPT developed from extensive research and development, testing, hiring *software engineering consultants* and many other expenses, on those terms, ATS and TPT commenced doing business. The remainder of the Application is replete with references to the digital engine controllers and the data therein.

At the end of the Application the prayer contains the components of the requested Temporary Restraining Order including in pertinent part:

(b) The use or conveyance of any and all licenses related to *software* and/or hardware for industrial turbine engine controls for T-55 and TF-40 engines, particularly for use in hydraulic fracturing equipment...

(c) *Copying*, selling, alienating, transferring, and/or providing goods or services for digital engine controls for turbine powered hydraulic fracturing equipment...

9

(d) Representing that any of the Defendants owns **digital control systems** and/or packages for turbine powered hydraulic fracturing equipment...

(g) Using any turbine engine **digital control systems** for TF-40 or T-55 engines which arose from or relate to consulting services, contract(s) or employment between any of the Defendants and Turbine Powered Technology, LLC and/or Green Field Energy Services, Inc...

(h) Sales, transfers and/or use of hydraulic fracturing equipment and related **computer programs** related to or derived from TF-40 or T-55 digital control systems...

(i) Entering into or performing any services pursuant to any and all contracts to provide goods and/or services related to T-55 and/or TF-40 engine controls for hydraulic fracturing...

(k) Use, sale, transfer and/or disclosure of any **information**, goods and/or services which contain or are based on the TF-40 and/or T-55 turbine engine digital controls, however denominated...

(n) Contacting or hiring any of Green Field Energy Services, Inc.'s past technical, sales, or support personnel who might have knowledge of plaintiff's trade secrets regarding plaintiff's turbine **engine controls data** or the identities of plaintiff's present or former customers...

(p) Transferring any and all rights to intellectual property related to turbine engine powered hydraulic fracturing equipment and controls.

(Rec. Doc. 1-4 pp. 103-105; emphasis added).  Attached as Exhibit B to that Application is a Turbine Driven Equipment License Agreement between Green Field Energy Services, Inc. and TPT whereby TPT licensed its technology to Green Field.   Under the DEFINITIONS section of that Agreement, the term **"Copyrights"** (emphasis original) is defined as one of the considerations under the license.  (Rec. Doc. 1-4 p. 113).  Under Section II of the Agreement it states that Green Field is granted a license which is:

"A perpetual, irrevocable, royalty-free, fully transferrable and designable, worldwide exclusive, license under Licensor's Patents, Copyrights and Trade Secrets relating to the Frac Stack Pack ™ technology to make, use, sell, offer to sell, transfer, lease, pledge, commercialize or may any agreement or engage in Service Activities with respect to or otherwise deal

with Licensed Products or other products in the Well Service Business...

The right to acquire from third party vendors... any components that embody the Frac Stack Pack ™ technology and Licensor agrees it shall provide consent to any such vendors to supply such components directly to Licensee.

As Exhibit D to the Application, TPT provided the mutual Non-Disclosure Agreement between TES and Green Field.  That Agreement covers a broad range of trade secrets, "technical information", "computer programs", "source code" and "object code", as well as other intellectual property rights and other proprietary information. (Rec. Doc. 1-4 pp. 125-128).  Specifically that Agreement discusses all information disclosed in "written, graphic, photographic, recorded or in any other form" by one party to the other including protecting information that might be used in patents and/or might be subject to trademark or copyright protection. *Id.* at p. 126.

The TRO was granted on November 14, 2016.  (Rec. Doc. 1-4 pp. 108-112). It incorporated all of the terms and provisions set forth above, referenced the contracts attached to it and set a hearing on a preliminary injunction on January 3, 2017.  Service of the TRO was made on Braccio on December 13, 2016. (Rec. Doc. 1-4 pp. 133-135). Service on ATS was made on December 29, 2016.  (Rec. Doc. 1-4 pp. 158-164).

### 3.  Preliminary Injunction

A hearing on TPT's Motion for Preliminary Injunction was held on January 3, 2017. After taking evidence and hearing testimony, the Court granted the Preliminary Injunction effective at 8:30 a.m. on January 5, 2017.  (Rec. Doc. 1-4 pp. 173-176). The Order referenced TPT's Verified Petition and the attachments to the same, along with the evidence entered into the record at the hearing.  In pertinent part, the Order stated:

**ORDERED** that defendants... Kenneth Braccio, Advanced Turbine

11

Services...and each of them and their agents, servants, employees, attorneys and all persons in active concert and in participation with them be enjoined and restrained from the date hereof from:

(b) The use or conveyance of any and all licenses related to *software* and/or hardware for industrial turbine engine controls for T-55 and TF-40 engines...

(c) *Copying*, selling, alienating, transferring, and/or providing goods or services for *digital engine controls* for turbine-powered hydraulic fracturing equipment...

(h) Sales, transfers and/or use of hydraulic fracturing equipment and related *computer programs* related to or derived from TF-40 or T-55 digital control systems...

(k) Use, sale, transfer and/or disclosure of any *information*, goods and/or services which contain or are based on the TF-40 and/or T-55 *turbine engine digital controls*, however denominated, ...

(n) Contacting or hiring any of Green Field Energy Services, Inc.'s past technical, sales, or support personnel who might have knowledge of plaintiff's trade secrets regarding plaintiff's *turbine engine controls data*...

(p) Transferring any and all rights to intellectual property related to turbine engine powered hydraulic fracturing equipment and controls...

## 4.  Same Song, Different Chorus[6]

While the Preliminary Injunction was in place the original defendants to plaintiff's Complaint filed a collateral attack in this Court on March 13, 2017 which was designated as Docket No. 17-0386.  ATS and Braccio were among those defendants.

Paragraphs 15, 16, 18 and 21 of the Complaint filed by ATS and Braccio set forth the history of David Crowe working for TES and that 25 IDECs or "control units" were purchased through ATS from TES.  Those paragraphs also show that Mr. Crowe left TES to found Arizona Turbine Technology which became a competitor to TPT.  Paragraph 22

---

[6] Copyright Urban Dictionary 2020.

12

of that Complaint details that TES was awarded a patent for a multi-compatible digital engine controller "which entails the control of multiple variants of gas turbine engines without requiring a change in ***software and configuration data***." (Emphasis added). That is the digital controller which was purchased by TPT and used on TPT's equipment. Paragraph 42 of the Complaint claims that AZT's technology, a digital controller, is "limited to one engine and that engine's parameters which is hard-coded into its *DEC software*." (Emphasis added). Nowhere in the Complaint does it say what particular engine that is. In specifying the difference between AZT's controller and the controller used by TES, it is clear that the defendants made sure to delineate that the "software" in each digital engine controller was set apart. The defendants clearly knew that the digital engine controllers for turbine engines ran on software.

In response to that Complaint, TPT filed an Answer denying all claims and asserting all allegations in their Petition filed in No. 130379. Attached to the Answer were copies of the Original Petition and attachments, the Application for Temporary Restraining Order and Preliminary Injunction and attachments, and the Order granting the Preliminary Injunction. Those documents contained all of the substantive paragraphs quoted in the above sections pertaining to "software" and "computer programs" for digital engine controls. Not only had TPT made affirmative allegations regarding software and computer programs in its initial filings in state court, it also incorporated the same as defenses to the Complaint filed by ATS and Braccio in 17-0386.

### 5.  <u>Amended Petition for Damages</u>

TPT filed its Amended Petition for Damages on May 23, 2017 essentially to correct the name for defendant Donald I. Foley. This Petition reproduced and realleged all substantive paragraphs from the Original Petition including all paragraphs pertaining to

"software", "computer programs", "data", and the footnote 6 discussing that intellectual property could be contained in "copyrights". The Vendor Agreement was also attached to this Amended Petition.

### 6. Motion to Dissolve Preliminary Injunction

On May 26, 2017 the defendants filed a Motion to Dissolve Preliminary Injunction in No. 130379. (Rec. Doc. 1-5 p. 7-8). On page 8 of the defendants' Memo in Support, they reference the *TES v. TPT* litigation, No. 14-01868, and discussed that the court determined that TPT's trade secrets may have been in software for the digital engine controller but that TPT had failed to provide enough detail to discern what might have been legally protectable. (Rec. Doc. 1-5, p. 17). By referencing that case, counsel was also referencing everything therein, including Mr. Crowe admitting that TPT's information for timing, temperatures, flow rates, horsepower settings and pressures were incorporated into the software for the "IDECs for TPT products." 2016 U.S. Dist. LEXIS 44696.

That motion was heard in the 16th JDC on June 15, 2017. During that hearing Mr. Crowe was presented for testimony. With regard to enjoined activities, he testified in pertinent part:

> Q:  Ok.  You understand that this is the, this document lays out the scope of the injunction against you and your co-defendants?
>
> A:  I do understand that.
>
> Q:  Ok.  So let's go to sub "B" here.  It says, the use or conveyance of any and all licenses related to software and/or hardware for industrial turbine engine controls for T-55 and TF-40 engines particularly for the use of hydraulic fracture and equipment.  Do you see that?
>
> A:  I do see that.
>
> Q:  Do you understand that?
>
> A:  I understand what it's trying to say.

14

(Rec. Doc. 1-6, p. 148-149).  After confirming his "understanding" about the "software and/or hardware for industrial turbine engine controls", Mr. Crowe was then asked about another company that was not included under the injunction called Vericor.  _Id_. at p. 149. He explained that Vericor manufactures the engines including a "newer variant of the TF-40 for frac equipment.  _Id._  The following ensued:

> Q:  So this is for turbine hydraulic fracturing?
>
> A:  Turbine hydraulic fracturing.
>
> Q:  Would this include software and/or hardware for industrial turbine engine controls?
>
> A:  Yes, it would.

(Rec. Doc. 1-6 p. 150).  Mr. Crowe was not asked and did not explain whether or not Vericor manufactured multi-fuel controls for turbine engines.   Later Mr. Crowe was asked:

> Q:  For instance, let me ask you this.  Could you work for Vericor in your field without violating this (injunction)?
>
> A:  No.
>
> BY THE COURT:
>
> Q:  Well, why not?  Why?  What prohibits you from doing business with Vericor?
>
> BY THE WITNESS:
>
> A:  The use or conveyance of any license or related software...

(Rec. Doc. 1-6 pp. 153-154).

Later in the hearing Mr. Crowe was asked about his work after leaving TES.  He stated:

> I have a, I do have a broad buy-out that says I will not use any TES developed hardware or software, which I have complied with.

(Rec. Doc. 1-6 p. 160 L. 14-16).   Under cross-examination Mr. Crowe stated in pertinent

part:

> Q:  Do you think that you are allowed, after having participated in TPT's hydraulic fracturing turbine driven frac project, to utilize any software controls for T-55 or TF-40 engines in the hydraulic fracturing oil and gas industry?   (objection omitted).
>
> BY THE WITNESS:
>
> A:  Let me restate your question.  That I am allowed to use any - -
>
> Q: No, I'll simply it for you if you'd like.
>
> A:  Ok.
>
> Q:   Utilizing technology for software controls for gas turbine powered hydraulic fracturing equipment.  Does this order prevent you from engaging in that business? What is your understanding?
>
> A:  My understanding is it does not.
>
> Q:  Why not?
>
> A:  It gets to the heart of the matter that I cannot use his trade secrets, but I do not use his trade secrets.  I use my trade secrets.
>
> Q:  That's not what I asked you Mr. Crowe.  I said, does this order allow you to lawfully engage in upgrading software controls for turbine powered hydraulic fracturing equipment?
>
> A:  That order I believe is - - your contention is it does not.
>
> Q:  I am not asking myself questions.  I am asking you per your reading of this order, are you lawfully allowed to engage in installing software controls for turbine powered hydraulic fracturing equipment in the oil and gas industry?  (Objection omitted).
>
> BY THE WITNESS:
>
> A:  My understanding is that it says I cannot.

(Rec. Doc. 1-6 pp. 165-167).  Still later in his testimony Mr. Crowe made the connection

to ATS:

16

Q:  Alright.  And you maintain that TPT was not a customer of Tucson Embedded Systems?

A:  Not for hydraulic fracturing I don't believe.

Q:  For equipment and services related to hydraulic fracturing for software, controls development and consulting work relating to hydraulic fracturing is the question.

A:  We sold hydraulic fracturing controls to ATS.

Q:  Ok.

A:  Let me rephrase.  We sold turbine engine controls to ATS.

(Rec. Doc. 1-6 p. 186).  Mr. Crowe then also made the connection to the use of turbine engines for power generation:

Q:  Ok, so it was for turbine powered, industrial turbine powered equipment controls, either hardware or software, that's what these payments were for by TPT to Tucson Embedded Systems?

A:  Most of these look like they are for a generator.

Q:  Yeah.  That's industrial turbine powered equipment.

A:  I think you said hydraulic fracturing.

Q:  No I didn't.  I specifically differentiated it.

A:  Ok.  So this is mostly for turbine powered generation.

(Rec. Doc. 1-6 p. 188).

Later in the hearing Mr. McIntyre was called to the stand.  Under questioning by defense counsel Mr. McIntyre testified that the IP pertained to "controlling" a turbine engine:

Q:  And what is that IP?  Because we've discussed today that there were patents, there were trademarks, there were ***copyrights***, there were trade secrets.  We need to get specific.  What are you asserting against my client that is your intellectual property that he's in violation of? (Objection omitted).

Q:  Right.  So where in the Petition is there an assertion of patent infringement?

17

There isn't one, is there?

A:  No, no.

Q: Your Petition against my client does not assert patent infringement, does it?

A:  The IP was developed under contract and we owned all the IP.  The fact that patents were applied for by Mr. Crowe while he was employed by TES became apparent after they filed litigation against TPT.  This was discovered while engaged in the action in Arizona.

\*\*\*

Q:  So if it's not a patent that he has misappropriated, what is the intellectual property that my client has misappropriated that forms the basis of your lawsuit?

A: I just said, controlling a turbine engine for hydraulic fracturing and power generation.

(Rec. Doc. 1-6, p. 214-215).  After further questioning the court intervened admonishing counsel for defendants that he was getting into issues that go to trial on the merits. Counsel responded as follows:

BY MR. MEADE:  Ok, so your Honor - -

BY THE COURT:  Let's move on.

BY MR. MEADE:  - - Taking judicial notice or actually it's not even judicial notice, the claim against my client does not assert a patent. It does not assert even a trademark, which he is willing to acknowledge. ***It doesn't assert a copyright.*** It's just a vague claim of secrets, which he's saying is

BY THE COURT: Ok.  That's your argument.  I've got it.  Move on.

(Rec. Doc. 1-6 p. 217). Counsel further stated that "copyright" was another category of intellectual property which TPT did not sue under. (Rec. Doc. 1-6 p. 218 L. 6-7). Nevertheless, after additional objections and colloquy, Mr. McIntyre further answered:

Yes, I would say trade secrets are related to information derived from your own experience, from your work product from work that was under contract that you were obligated to protect through NDAs, confidentiality agreements.  In particular, our case was the controlling of a hydraulic fracturing unit using the turbine engine with a digital engine controller.

18

Because up until we created that product in Franklin at the Port of West St. Mary it had never been done before.

(Rec. Doc. 1-6 p. 222).  Additional questioning revealed the following:

Q:  Is it your contention that everything the defendants – well, let's just take David Crowe for example, that everything he does after having worked at TES, you have a right in?

A: Everything that he does relating to hydraulic fracturing in industrial turbine applications using software and the IP embedded in, yes, we claim that.

Q:  Ok, well I appreciate that because that's a significant limitation as I can tell is that you're talking when it involves a particular software.  I believe you just made a reference to software.

A:  Software is just one example.

Q:  Ok.

A:  It's all the embedded technology in the software.  The source code and the hardware design that we paid for, that we own that is used for hydraulic fracturing using turbine engines.

(Rec. Doc. 1-6 p. 225)

The Court took the issue under advisement.  However, before the Court could rule, defendants removed this case for the first time.  Even though defense counsel had stated repeatedly during the hearing on the Motion to Dissolve Preliminary Injunction that this was "not a patent case", along with it not being a "copyright" or "trademark" case, counsel nevertheless removed the matter to this Court on alleged grounds of diversity jurisdiction and Patent issues under 28 USC § 1454.  That section of Title 28 also pertains to copyrights.

### 7.   "But I will wear my heart upon my sleeve for ... I am not what I am."[7]

---

[7] Othello, Act I, Scene I, William Shakespeare 1604.  This quote is from the villain Iago essentially saying that he will act whichever way he needs to suit his purposes.  Though Shakespeare's works are now in the public domain, due credit has been given to avoid even a hint of any copyright equivalency issue.

Defendants removed this case from the 16th JDC on June 22, 2017 to the Western District of Louisiana designated as Civil Action No. 17-0801. TPT moved to remand on July 19, 2017. The defendants'' Memo in Opposition to plaintiff's Motion to Remand was filed on August 29, 2017. In that Memorandum the defendants once again cited to the case of *TES v. TPT* and how it pertained to TPT's alleged trade secrets.

On pp. 3-4 and 10-11 of the Memo defendants cite to Mr. McIntyre's testimony at the June 15, 2017 hearing on the Motion to Dissolve. Defendants were attempting to claim that patents were involved in the case, therefore only included the sections of Mr. McIntyre's testimony they felt pertinent to that issue. At that time defendants only raised the issue of Patents, even though the issue of software and computer programs and embedded data was already known to them.

This Court issued its Report and Recommendation on February 14, 2018 recommending that the case be remanded to the 16th JDC. *Turbine I.* This Court specifically rejected the argument by the defendants that this case involved patents. The Court presciently stated:

> When questioned as to the identity of the intellectual property that Defendants allegedly misappropriated if it was not a patent, McIntyre responded, "controlling the turbine engine for hydraulic fracturing power generation...it's all the embedded technology in the software. The source code and the hardware designed, that we paid for, that we owned that is used for hydraulic fracturing using turbine engines."

*Turbine I* at p. 24.

This Court's recommendations were adopted and the case was remanded to the 16th JDC on February 23, 2018. In the end this Court found that TPT's allegations instead of being "not what I am" (not what they appear to be) were in fact truly "what they were"; allegations under state law that did not pertain to patents even though the defendants in

20

their best impersonation of Shakespeare's villain, tried to make them something else.

### 8.  The wheels on the bus go round and round...[8]

Once the case was remanded to state court, TPT filed its Second Amended and Supplemental Petition on February 28, 2018.  (Rec. Doc. 1-5 pp. 199-245). This petition reproduced all substantive paragraphs from the original and First Supplemental and Amending Petitions.   It included paragraphs 27-34, 41 and its footnote, 43-44 and 55. Paragraph 57 was amended to include the term "software upgrades" to digital engine controls.  (Rec. Doc. 1-5 p. 212).  This was an additional reference to software over and above those previously contained in the Original and First Supplemental and Amending Petitions.   Paragraphs 163 and 164 realleged all allegations of the Original Petition, the Application for TRO and Preliminary Injunction.

Defendants then filed a Writ seeking review of the trial court denying the Motion to Dissolve.  Apparently not realizing the case had been removed, Judge Aucoin in the 16th JDC issued Reasons and a Judgment on July 17, 2017.  In order to correct the record, Judge Aucoin signed the Judgment on April 2, 2018 reaffirming its previous Judgment denying the Motion to Dissolve.  (Rec. Doc. 1-5 pp. 345-350).

In the meantime the defendants had filed a Motion for Stay Pending Appeal on March 6, 2018.  In the Memo in Support of that motion, the defendants argued that patents were involved specifically noting and quoting Mr. McIntyre's testimony that:

> ... "All the embedded technology in the software.  The source code and hardware designed that we paid for, that we own that is used for hydraulic fracturing using turbine engines."

---

[8] On the Bus, Copyright Verna Hills 1939.

(Rec. Doc. 1-5 p. 264).  This quote was taken directly from the testimony of Mr. McIntyre on June 15, 2017 and reproduces the same quote used by this Court in *Turbine I*.  The Motion to Stay Pending Appeal was denied.

TPT then attempted to conduct discovery and also move for contempt against the defendants contending they were continuing to do business in violation of the court's Preliminary Injunction.  The state judge conducted a hearing and on April 9, 2018 granted the Motion for Contempt, reserving damages for a future hearing.  The defendants failed to respond to discovery requests.  Motions were then filed by TPT requesting that answers be compelled and for contempt for failure to comply with the state court's orders.

Undaunted, the defendants propounded their First Request for Admissions, Interrogatories and Requests for Production in No. 130379 on February 3, 2019.  Attached as **Exhibit P-2.**  Of note, defendants' first 15 Requests for Admissions pertain specifically to the claim by TPT that its trade secrets were contained in the software of the IDEC manufactured by TES.  Specifically, Request for Admission No. 3 states:

### REQUEST FOR ADMISSION NO. 3:

Admit that in the foregoing counter-claim for misappropriation of trade secrets, TPT alleged that TES "improperly and without authorization from Turbine Power incorporated into the IDEC software the foregoing trade secrets to develop the operating parameters of the TES engine control system."

Requests for Admission Nos. 4, 5 and 6 talk specifically about the computer source code. Requests for Admission No. 10 stated:

### REQUEST FOR ADMISSION NO. 10:

Admit that in the aforementioned case No. 14-cv-1868 in the District of Arizona TPT stated as follows:

> Without the trade secret information they learned from TPT, TES and Crowe would not be in the turbine generator business at all and would not be able to manufacture for sale turbine generators running on field gas for industrial use in oil and gas applications.

Requests for Admission No. 14 and 15 both pertain to "tuning intellectual property" which was the specific TPT trade secrets necessary to tune the IDEC to control the industrialized turbine engines. Finally, Request for Admission No. 22 states:

**REQUEST FOR ADMISSION NO. 22:**

> Admit that the "tuning intellectual property", as disclosed in the TES-TPT settlement agreement are the same trade secrets that you claim that Defendants in this case (No. 130379)have misappropriated and/or infringed.

In response to Request for Admissions No. 1-15, TPT made general objections but ultimately admitted that each Request for Admission pertained to a document and that each document was "the best evidence of their contents", essentially admitting that each of the statements made in Request for Admissions 1-15 were true. In response to Request for Admission No. 22, TPT stated in pertinent part:

> While the defendants did indeed misappropriate TPT's tuning intellectual property which was developed through millions of dollars and years of TPT and its licensee, Green Field Energy Services, Inc. and subcontractors' work, the trade secrets which the Defendants misappropriated are not entirely "the same trade secrets" but only comprise a portion thereof. The trade secrets also consisted of proprietary vendor lists, bills of materials, customer information, testing data, multi-fuel testing data, programming data, and many other types of proprietary information.

TPT's Response to Requests for Admission attached as **Exhibit P-3**.  TPT therefore admitted on February 18, 2019 that it had trade secrets contained in the "tuning intellectual property" contained in the software that controlled the TES IDEC and that it was, in part, the same trade secrets as were being alleged in the case filed in St. Mary

23

Parish.

Because of ongoing discovery disputes, a Motion for Contempt and Sanctions was filed on March 28, 2019 by TPT against all defendants. A hearing was scheduled to be conducted on May 1, 2019. While these motions were under consideration, the defendants filed their Second Notice of Removal on April 14, 2019.

### 9.  **How do I love thee?  Let me count the ways**.[9]

Once again exhibiting their unrequited passion for federal court, the defendants removed this case for the second time based upon federal question jurisdiction under the bankruptcy code. By this time David Crowe had taken personal bankruptcy in Arizona. Removal was proper based upon that federal filing. TPT moved for remand on May 15, 2019. This was after the defendants had moved for reassignment of the case between District Judges and filed a Motion to Transfer Venue to the Bankruptcy Court in the District Court in Arizona.

After reviewing all the pertinent pleadings and evidence, this Court recommended remand on August 12, 2019. *Turbine II*. The Court noted that the case had been pending in state court for a number of years and that removal at this stage would "significantly prejudice TPT." *Id.* at p. 33. The Court stated as a harbinger of things to come:

> Removal would also ignore TPT's efforts in the Louisiana state court in moving this case to trial and result in much wasted time and effort. Principles of comity and judicial economy, as well as the interests in having a prompt and just resolution of these issues are best served by a Louisiana state court determination of the parties' rights and liabilities.

*Turbine II* at p. 33. Little did the Court know at that time that the defendants would try a third removal just three months before the scheduled trial date in state court.

---

[9] Sonnet 43, Elizabeth Barrett Browning, 1806-1861.

This Court's recommendation was reviewed and affirmed and the case was remanded on August 26, 2019.

### 10.   "They cannot take away our self-respect if we do not give it to them".[10]

On September 5, 2019 the Louisiana First Circuit Court of Appeal issued a decision reversing the trial court in denying the Motion to Dissolve Preliminary Injunction. *Turbine Powered Tech, LLC v. Crowe*, No. 2018-0881 (La. App. 1st Cir. 9/5/19), 2019 La. App. Lexis 1522.  The appellate court while admitting that the granting of the Preliminary Injunction invoked issues of fact, proceeded to completely disregard the trial court's factual findings, took the trial court's remarks in the middle of a hearing out of context, inexplicably gave no weight to the trial court's credibility determinations and, just substituted its decision for that of the trial court without even discussing the appropriate standard of review which mandated that the appellate court find that the trial court "abused its great discretion."[11]

Regardless of the appellate court's ministrations, that court made no findings on the merits of the case. The issue of whether or not "notice" of TPT's claims was *not* before that appellate court and it rendered no opinion on that issue.  TPT has soldiered on still seeking remedies for a permanent injunction and damages.

### 11. Reprisal!  "The wheels on the bus go round and round..."[12]

---

[10] Attributed to Mahatma Gandhi.

[11] See, *Freeman v. Treen*, 442 So. 2d 757, 761 (La. App. 1st Cir. 1983).  The court also failed to distinguish the time for appeal under La. Code of Civ. P. Art. 3612 which mandated a 15 day deadline.  Defendants did not meet that deadline.  Essentially, the appellate panel allowed the defendants unlimited time to take an appeal from the granting of a preliminary injunction and thus stands alone as the sole tribunal in the history of Louisiana jurisprudence to do so.

[12] <u>On the Bus</u>, Copyright Verna Hills 1939

After remand TPT filed a Motion for Hearing on a Scheduling Order and To Set a Trial Date.  The Court denied TPT's motion for a hearing and unilaterally selected a trial date of March 2, 2020.  (Rec. Doc. 1-9 p. 204). Notice that the case was fixed for trial on March 2, 2020 was issued on December 3, 2019 along with a Jury Order and the Court's standing Pretrial Order.  (Rec. Doc. 1-9 pp. 197-208).

On December 10, 2019 TPT filed a Motion for Defer all Pending Motions and Exceptions to the trial date and to close discovery.  In the meantime the defendants filed a Motion to Traverse the Trial Date.

A hearing was held on January 15, 2020 with the Court vacating the trial date and holding a status conference.  At that conference it was agreed that trial would be rescheduled for November 9, 2020.  The trial court entered an Order for trial by jury on June 8, 2020, confirming the November 9, 2020 date.  (**Exhibit P-4**).

While the Defendants were continuing to spin their wheels filing motions, they managed to file additional discovery requests on January 6, 2020. (Rec. Doc. 1-14 pp. 35-46).  In particular, Request for Production Nos. 11, 12, and 14 pertain to "source code", "object code" and "software":

### REQUEST FOR PRODUCTION NO. 11:

Please produce all documents reflecting the digital engine control source code TPT claims as protected, proprietary and confidential technology.

### REQUEST FOR PRODUCTION NO. 12:

Please produce all documents reflecting the digital engine control object code TPT claims as protected, proprietary and confidential technology.

### REQUEST FOR PRODUCTION NO. 14:

Please produce all documents reflecting the digital engine control software

upgrades TPT claims as protected, proprietary and confidential technology. These discovery requests clearly show that the defendants had notice of TPT's claims.

In an effort to speed up the delivery of documents to be produced in discovery, then counsel for TPT, Lauren Williams, forwarded an email to counsel for defendants with a dropbox link containing all of the documents that had been produced to TPT to date from third party subpoenas. **(Exhibit P-5)**. One of the companies who produced documents pursuant to subpoena was TES. That production included a number of pages reflecting the "source code" at issue. **(Exhibit P-6 under Seal, Bates Nos. TPT-Crowe 0006868-0006991 filed under separate motion)**. The Court will see from the Exhibit under seal that the source code is broken down in bundles. Specifically on the first page of each bundle appears the following language: "(c) Copyright 2011 by Tucson Embedded Systems, All Rights Reserved". **(Exhibit P-6 under Seal at p. TPT-Crowe 0006868, 0006900, 0006932, 0006939, 0006963 and 0006966).** There can be no doubt that TES had secured its software/source code under copyright protection.

### 12. "And now for something completely different."[13]

While the state court wheels spinning towards an eventual trial date, the David Crowe bankruptcy litigation was also taking place in Arizona. Case No. 19-bk-04406-BMW, Chapter 11 Proceeding; Adversary Case No. 19-ap-00260-BMW. On November 13, 2019 Crowe filed a Motion for Partial Summary Judgment seeking dismissal of TPT's adversary claim for damages due to misappropriated trade secrets on the grounds that the trade secrets had not been specifically described under precedent set forth by the United States Ninth Circuit Court of Appeals. TPT opposed the motion and filed its

---

[13] Catchphrase taken from Monty Python's Flying Circus, copyright British Broadcasting Company 1969-1974.

opposition on December 20, 2019.  Crowe filed his reply pleadings on January 10, 2020.
*In Re:  Crowe*, *supra*.  Oral arguments were held on June 23, 2020.  The bankruptcy court
then took the matter under advisement.  *Id.*

On July 31, 2020 the bankruptcy court issued its Opinion denying the Motion for
Partial Summary Judgment.  *Id.*  In its opinion the court recounted a number of different
matters spawned by the litigation between Crowe and TPT including the *TES v. TPT*
litigation filed in 2014 in Arizona.  The court took notice of the fact that TES and TPT
ultimately settled their differences with TES acknowledging that TPT has trade secrets
that are "incorporated into certain modules of the IDEC controls source code, developed
in connection with the adaption of the IDEC for turbine engines to power hydraulic
fracturing and pumping equipment applications".  *In Re: Crowe* at p. 6-7 (quoting the
TES/TPT Settlement Agreement of October, 2016).  The Court also cited testimony from
depositions taken in the *TES v. TPT*  case in 2016 as well as court testimony from Mr.
McIntyre in 2017.

The Court in part relied on the deposition testimony of a TES employee, Elden
Crom, taken in 2016, which specifically noted that TPT had provided interface
information or "interface chunks" which were embedded in the IDEC control source code.
*Id.* at p. 21 and 28. All of the information used by the bankruptcy court was taken from
litigation, deposition transcripts and hearing testimony all existing before Crowe filed his
Motion for Partial Summary Judgment  on November 13, 2019.  The docket of the
bankruptcy court makes it clear that Kenneth Braccio is a creditor in the Chapter 11
proceeding which is a companion to the adversary case.  The court docket also makes it
clear that notices of all filings are given in both cases.

### 13. "Stop in the name of love".[14]

Still yearning for federal court, the defendants removed this matter for the third time on August 4, 2020 pursuant to 28 USC § 1331, 1338, 1441, 1446 and 1454.  The defendants claim that they have finally, after years of litigation, received discovery responses which "revealed that TPT's claims are preempted by federal copyright law." The defendants claim that these discovery responses made on July 14, July 15 and August 1, 2020 finally "made clear" that TPT's claims rested on the allegations that the defendants have wrongfully used "computer source code" developed to control the turbine engines in certain fracking and power generation units built by TPT, as well as the ideas, intellectual property, technical processes and operational modules fixed in that source code that are allegedly owned by TPT.  Defendants claim that the removal is timely under 28 USC § 1446(b)(3) as the Notice of Removal was filed within 30 days after receipt of "other paper" from which defendants say they first "ascertained that this case has become removable pursuant to federal copyright law.

The thrust of their claim is that TPT's causes of action involving the TES software and source code as containing TPT's trade secrets has been preempted by the Federal Copyright Act 17 USC § 301(a).  The defendants state:

> It is well settled that computer programs fall within the subject matter of copyright. (Citations omitted).  Not only are computer programs and software within the subject matter of copyright, but so are the ideas and technical processes and systems that are fixed in the tangible medium of a computer code or program.  (Citation omitted).  Specifically, alleged "technical trade secrets found within" a computer software program fall within the subject matter of copyright.

Notice of Removal (Rec. Doc. 1) at p. 8-9.  Defendants admit that TPT has not alleged any

---

[14] Sung by The Supremes; copyright Holland-Dozier-Holland (1965).

29

copyright violations in it in any of its state court Petitions.   Defendants rely on jurisprudence stating that TPT state law claims are the "equivalent" of a copyright claim. (Rec. Doc. 1) at p. 9.

Hoping at long last that the federal court will embrace their years of longing, the defendants once again seek a long-term relationship with the federal system while attempting to divorce themselves from St. Mary Parish after years of commitment in the 16th JDC.

## C.  LAW AND ARGUMENT

Federal district courts are courts of limited jurisdiction, possessing only the power authorized by the Constitution and by statute. *Griffin v. Lee*, 621 F. 3d 380, 388 (5th Cir. 2020); *Howery v. Allstate Insurance Company*, 243 F. 3d 912, 916 (5th Cir. 2001).  A suit is presumed to lie outside of a federal court's jurisdiction until the party invoking federal court jurisdiction establishes otherwise.  *Howery* at 916.  Because "the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns."  *Carpenter v. Wichita Falls Independent School District*, 44 F. 3d 362, 365 (5th Cir. 1995).  The removal statute is therefore to be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand and against federal court jurisdiction.  *Id.* at 366; *Acuna v. Brown & Root, Inc.*, 200 F. 3d 335, 339 (5th Cir. 2000).  The party invoking subject matter jurisdiction in federal court has the burden of establishing the court's jurisdiction by a preponderance of the evidence. *Howery* at 919.  When an action is removed from state court, the removing party bears the burden of proving that federal jurisdiction exists.  *Shearer v. Southwest Service Life Insurance Co.*, 516 F. 3d 276, 278 (5th Cir. 2008).  Accordingly, defendants as the removing parties, have the burden of establishing that this Court has jurisdiction over this

matter.

## 1. **Knowledge of the Defendants**

It is anticipated that the defendants will argue that, while Mr. Crowe may have had certain knowledge concerning software, computer code and digital controls, ATS and Braccio did not.  It is anticipated that the defendants will argue that Mr. Crowe's knowledge cannot be imputed to them. This argument, if it is made, would seriously miss the point.

From the outset all of the defendants were represented by the same counsel. Despite the inherent and potential conflicts of interest that could arise between the parties, they remained as joint clients to the same counsel through September of 2019.  In fact, the defendants, along with Mr. Crowe and AZT, are still represented by the same counsel in 17-cv-0386 and 17-cv-0510.  All of the knowledge and information gained by counsel for ATS and Braccio from the time this matter was filed in state court in 2016, and gained about the previous litigation filed in Arizona, becomes pertinent.

The general rule is that information known or acquired by an attorney during the scope of his employment is imputed to his client. *Perez v. Stephens*, 784 F. 3d 276, 283 (5th Cir.  2015); *Anderson v. Bank of America*, 2010 U.S. Dist. Lexis 1540 (S.D. Miss. 1/6/10) at p. 4.  Counsel for ATS and Braccio thus had the obligation to share their knowledge with their clients.

It is clear from the events that have unfolded over the years that counsel for ATS and Braccio had notice of issues pertaining to computer software, source code and object code from the outset and that potential patent and copyright claims could be involved. Regardless of why counsel decided that there were no patent claims involved (later recanted) or that there were no copyright claims involved (as stated in the June 15, 2017

31

hearing), it is clear that counsel had the legal knowledge and notice with which to investigate any potential copyright claim involving software or computer code with regard to the digital controls at issue in this case.

If the defendants argue that counsel never shared that information with them or were negligent in not bringing a copyright claim at the same time it removed the case pursuant to federal question jurisdiction for a perceived patent claim, then they are unfortunately out of luck.  It is well established that "clients" must be accountable for the acts and omissions of their attorneys." *Pioneer Inv. Servs Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 396, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993); *Link v. Wabash RR Co.*, 370 U.S. 626, 633, 82 S. Ct. 1386, 8 L. Ed. 2d. 734 (1962)(noting that the mistakes of counsel, who is the legal agent of the client, are chargeable to the client).  *See also, Pryor v. U.S. Postal Service*, 769 F. 2d 281, 289 (5th Cir. 1985)("while we are sympathetic to the plight of a client prejudiced by his attorneys in advertence or negligence, the proper recourse for the aggrieved client, as the Supreme Court noted in *Link*, is to seek malpractice damages from the attorney").[15]   Accordingly, defendants ATS and Braccio are charged with the full knowledge of all of  the information known by their attorneys, the testimony elicited at court hearings, knowledge of the pleadings which have been filed, by TPT and also by their own counsel, and discovery requests that have been prepared by their counsel, presumably approved by ATS and Braccio as clients, and the responses thereto.

---

[15] To the extent that Louisiana law would regulate the relationship and obligations between attorney and client, it should be noted that Louisiana law is no different from federal law. *Allen v. Frank Janes Co.*, 142 La. 1056, 78 So. 115 (1918)("It is settled that the knowledge of an attorney is imputable to his client."); *Barber v. Testa*, 331 So. 2d 139, 140 (La. App. 3d Cir. 1976)("The law is well settled that notice to an attorney of record is noticed to the client."); *Knight v. State*, No. 17-0462 (La. App. 3d Cir. 12/13/17), 2017 La. App. Unpub. Lexis 383 at p. 9 ("It has long been held that notice to an attorney of record is notice to the client.")

The record is replete with references to software and source code.  The *TES v. TPT* case in Arizona was all about TPT having trade secrets in the source code for digital turbine controls.  ATS and Braccio's Requests for Admissions to TPT quote extensively from the TES case and even asked TPT to admit the "tuning" data embedded in the TES source code was the same data involved in the Louisiana state court case and claimed as trade secrets.  TPT admitted it was.  Defendants' counsel questioned Mr. McIntyre extensively at the June 15, 2017 hearing in the 16th JDC.  This Court and defendants' counsel have both quoted Mr. McIntyre's testimony that the trade secrets were "embedded" in the software.  To now claim that defendants had no notice of such claims borders on the absurd.

## 2. **Multiple Removals on the same Facts are not Allowed**

As a general rule, once a case is remanded to state court, a defendant is precluded from seeking a second removal on the same ground.  *S.W.S Erectors, Inc. v. Infax, Inc.*, 72 F. 3d 489, 492 (5th Cir. 1996).  "The prohibition against removal 'on the same ground' does not concern the theory on which federal jurisdiction exists (that is, federal question or diversity jurisdiction), but rather the pleading or event that made the case removable."  *Id.*  Thus a second removal (or in this case third) can be permitted only when a new pleading or event provides a "new factual basis" for removal.  *Id.* at 493-494.  Courts in the 5th Circuit have been uniform in remanding cases where a second removal was based upon the same facts and pleadings known at the time of the first removal.

In *Ryan v. Calcasieu Parish Police Jury*, 2019 U.S. Dist. Lexis 137990 (W.D. La. 5/28/19), one of the defendants, Sasol Chemicals, attempted to remove the suit from the 14th JDC, Parish of Calcasieu, to the Western District of Louisiana, Lake Charles Division, on the basis of diversity jurisdiction.  *Id.* at p. 4.  The court found that complete diversity

did not exist and therefore remanded the case.  At the time of the first removal, facts existed for Sasol to be aware that one of the claims potentially conflicted with a federal statute, the Chemical Facility Anti-Terrorism Standards (CFATS), 6 USC § 622, et. seq. Nonetheless, Sasol continued to litigate in state court.

After the plaintiff filed a Rule for Contempt against Sasol, Sasol removed the case for a second time on November 15, 2018 on the basis of federal question jurisdiction alleging for the first time that the plaintiff's claim would prevent them from complying with their obligations under CFATS.  *Id.* at p. 6.  The plaintiff moved to remand.

Sasol argued that the case first became removable under federal question jurisdiction when the plaintiff filed the Rule for Contempt and revealed "an actual dispute over the nature of the obligations that can be imposed by the state court and the extent to which [they] are supplanted by the federal regulatory framework required of facilities under the CFATS."  The plaintiff countered that the Rule for Contempt could not have revealed for the first time that the case was removable because it only sought enforcement of a judgment "that embodied only the prayers for relief" in the plaintiff's earlier state court pleadings.  The court agreed with the plaintiff.  It essentially held that if the case could be removed based on a conflict between the plaintiff's claims under state law with Sasol's obligations under CFATS then this basis would have been clear from the injunctive relief requested by the plaintiffs in their Second Supplemental and Amended Petition in February of 2017.  *Id.* at p. 11.  The Magistrate Judge found that Sasol's removal on November 15, 2018 was "untimely" and the case was remanded.  *Id.*  The court also awarded attorney's fees finding the removal arguments "objectively unreasonable". Her Report and Recommendation was reviewed and affirmed by the District Court on August 13, 2019. *Ryan v. Calcasieu Parish Police Jury*, 2019 U.S. Dist. Lexis 137729 (W.D. La.

8/13/19).

In *Kindrid Hospitals Ltd. Partnership v. Aetna Life Insurance Co.*, 2018 U.S. Dist. Lexis 150725 (N.D. Tex. 9/5/18), the defendant removed the action for a second time claiming preemption under the Employee Retirement Income Security Act of 1974, 29 USC § 1001, et. seq.  The plaintiff had filed suit against the defendant, Aetna, in Texas state court to recover unpaid insurance payments based on Aetna's representation that insurance would cover the charges.  Aetna filed its first Notice of Removal within 30 days of receipt of the plaintiff's Original Petition claiming that the claims were preempted under ERISA because the claims disputed the right of payment for particular services and coverage determinations.  *Id.* at p. 3.  The court remanded the case finding that the plaintiff had established that each of its claims rested on independent state law legal duties. *Id.*

After the court remanded the case, Aetna removed it a second time following the receipt of a Reply Memorandum that plaintiff filed in support of a Motion to Compel Production of Documents.  *Id.*  Aetna argued that the plaintiff had made statements in its memorandum that made it clear for the first claiming that Aetna underpaid the plaintiff by $4.2 million and that in doing so Aetna likely earned millions by underpaying the claims.  *Id.* at p. 4.  Aetna maintained that these clarifying statements "constituted removable claims based on ERISA complete preemption."  *Id.*  The plaintiff moved to remand.

The District Court noted that a second removal could be attempted "so long as the second removal is not sought on the same ground" as the first removal.  The court found that Aetna knew at the time of the first removal that the plaintiff had established that each of its claims rested on an independent legal duty under state law with regard to the same

insurance payments at issue in the second removal. It found that Aetna had not explained how the statements in the Memorandum in Support of Motion to Compel, even if they revealed new information, showed anything more concerning the ERISA statute than had been known at the time of the original state court filing. It discerned no factual allegations that were "sufficiently distinct" to provide a ground for removal that was not already disposed of under the first remand. The case was remanded back to state court and attorney's fees were awarded as the court found that Aetna "lacked an objectively reasonable basis for removal" the second time.

Other courts in the Western District of Louisiana, Northern District of Texas and Eastern District of Louisiana have all remanded cases that were removed a second time finding that no different factual basis for seeking the second removal was found. *See, Washington v. Riley*, 2014 U.S. Dist. Lexis 33726 (W.D. La., Lafayette Division, 3/11/14)(the court found that the pleadings cited by the defendant did not raise a different set of facts establishing a new ground for removal where the same constitutional issues were raised at the time of the first removal); *Tierney v. Unum Life Insurance Co. of America*, 2001 U.S. Dist. Lexis 15451 (N.D. Tex. 9/8/01)(concluded that deposition testimony did not present a new factual basis, but rather supported the same facts that the moving party had knowledge of at the time of the first removal); *Marseilles Homeowners Condo Assoc. v. Fontenell*, 2008 U.S. Dist. Lexis 21850 (E.D. La. 3/18/08)(where first removal involved claims for flood damage and second removal claimed federal question jurisdiction on the National Flood Insurance Program, the court found no different factual basis for seeking the second removal).

Just as in the preceding cases, the defendants here try to claim that discovery responses and the bankruptcy court's decision have "clarified" or "revealed" more specific

information about TPT's claims.  This does not create a "new factual basis" upon which this case can be removed for the third time.  The same basic facts of TPT claiming that it had data embedded in the TES source code have been pled and reviewed *ad nauseum* from the time of the <u>*TES v. TPT*</u> case in Arizona, through TPT's Original, First and Second Supplemental and Amending Petitions in the 16th JDC, to the hearing on the Motion to Dissolve on June 15, 2017 and even encapsulated in this Court's Report and Recommendation for Remand on February 14, 2018 in *Turbine I*.  To now claim removal on the basis that data embedded in the TES software has now been "specified" or stated with more particularity only shows that the original facts pled in the case have been confirmed.

The defendants' own Requests for Admissions and Requests for Production served on TPT are evidence against the defendants' claims that they had no notice of potential copyright issues or "equivalent" copyright issues were involved because of computer software or source code.  They specifically reference and ask about TPT's data, the software and source code at issue and the digital controls.  They do not get a "do over" now.

There is just no reasonably objective basis for defendants to now remove this case. The Court can remand on this basis alone.  By having no different factual basis with which to remove the case a third time, that removal is untimely.  <u>*Washington v. Riley*</u>, <u>*supra*</u>; <u>*Marseilles Homeowners Condo Assoc. v. Fontentell*</u>, <u>*supra*</u>. It therefore need not reach the issue of timeliness under 28 USC § 1446(b).  Nonetheless, TPT will address the untimeliness and federal question jurisdiction issues for the sake of completeness.

### 3.  <u>**The Third Removal is Untimely**</u>

This Court did not address the timeliness of the first removal in <u>*Turbine I*</u> finding

that the defendants could not establish federal question jurisdiction.  Should the Court not remand the case based upon improper multiple removals as set forth in the previous section, then it will have to address timeliness this time around.

Even though 28 USC § 1454 allows cases involving copyrights to be removed to federal court, that section does not fix open the federal courthouse doors for all defendants.   A defendant must seek removal timely.   Section 1454 specifically incorporates the procedures and deadlines applicable to other removals, including 28 USC § 1446.  Under § 1446(b)(1), a notice of removal must be filed "within 30 days after the receipt by the defendant, through service or otherwise, a copy of the initial pleadings setting forth the claim for relief upon which such action or proceeding is based."  If the case stated in the initial pleading is not removable, however, § 1446(b)(3) requires that a notice of removal be filed "within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleadings, motion, or other paper from which it may be first ascertained that the case is one which is or has become removable."  Thus, even under § 1454, a defendant who does not remove timely will be subject to a remand motion pursuant to § 1446.

In this case the defendants claim removal under § 1446 and § 1454(b)(2) which extends the 30 day time period to remove for "cause shown."  Each will be taken in turn.

### a.  § 1446(b)

Section 1446(b) provides two 30 day windows during which a case may be removed.  The first is during the first 30 days after the defendant receives the initial pleading; the second is during the first 30 days after the defendant receives a paper "from which it may first be ascertained that the case is won which is or has become removable" if the case stated by the initial pleading is not removable.

In this case the first 30 day window began when the defendants were served with plaintiff's Original Petition.  As previously shown, that Petition referenced software, computer programs and requested injunctive relief that the defendants be enjoined from using "software and/or hardware" for industrial turbine engine controls for T-55 and TF-40 engines, particularly for use in hydraulic fracturing equipment and also from "copying" digital engine controls for turbine powered hydraulic fracturing equipment".  Injunctive relief was further requested to prohibit "sales, transfers and/or use of hydraulic fracturing equipment and "computer programs" related to or derived from TF-40 or T-55 digital control systems.  These requests for injunctive relief came after all of the substantive paragraphs in plaintiff's Original Petition pertaining to ownership of the modifications to the industrial digital engine controls that were to be supplied by ATS or through its subcontractor TES.  Plaintiff's Original Petition was served on defendants ATS and Braccio in December, 2016.  It is clear that the first 30 day window has long expired.

A representative case is _XIP, LLC v. CommTech Sales, LLC_, 2015 U.S. Dist. Lexis 149174 (N.D. Tex. 11/3/15).  In that case the plaintiff had initiated an action on August 6, 2013 by filing an Original Petition in Texas state court.  The plaintiff amended its state court pleading four times, and in all of the pleadings it alleged that the defendants had illegally obtained and used plaintiff's intellectual property, including drawings.  The case had been litigated in state court for 2 years before the defendants removed claiming the plaintiff's claims were preempted under the United States Copyright Act.  Plaintiff moved to remand claiming that the court did not have subject matter jurisdiction and that the defendants did not timely remove the action.  _Id._ at p. 2.

The District Court noted that it did not need to resolve the copyright jurisdiction issue because, "even if subject matter jurisdiction exists, the action should be remanded

because the Removing Defendants did not timely remove it." _Id._ at p. 4.  The court noted that starting with plaintiff's original pleading in 2013 the plaintiff consistently complained of the acquisition and use by the defendant of plaintiff's intellectual property, including "copies of drawings".  The court noted that the case centered around "technical drawings" since it had been filed. _Id._ at p. 6.  Accordingly, the court found that if plaintiff's "copying" claims are preempted by federal copyright law, then the defendants should have known that to be the case since the action was originally filed in state court. _Id._

The court also addressed defendant's claim of a second 30 day window that in a Motion to Compel hearing, the plaintiffs "clarified that 'copying' of the drawings was at issue, instead of the more 'obtuse language" used in the plaintiff's Petition, such as, 'obtaining and utilizing,' and that by reason of the 'clarification' they for the first time were put on notice that plaintiff's conversion, unjust enrichment and theft claims were completely preempted by copyright law.  It held that the defendants' arguments were "not supported by the record." _Id._  Further, the court noted that the defendants had filed a Motion for Summary Judgment in State Court seeking dismissal of plaintiff's claims regarding the drawings. The court found that the summary judgment documents filed by the defendants established with "absolute certainty" that they understood "from the very beginning" that plaintiff was making claims of the kind that they were now claiming were preempted by copyright law. _Id._ at p. 8.  The court even noted that the defendants stated in their Motion for Summary Judgment that "[t]o the extent plaintiff is asserting a copyright claim, this (state) court does not have jurisdiction to decide the claim since it would constitute a federal question." _Id._ at p. 9.  Based upon this, the court concluded that the defendants were aware of any potential copyright claim when they received a copy of plaintiff's original pleading in August, 2013 and certainly no later than their receipt of

plaintiff's first amended pleading in September 2014 where the defendants sought dismissal by summary judgment. *Id.*

It is respectfully submitted that the *XIP, LLC* case should control in this matter. As in that case, TPT filed its Original Petition in state court making express reference to ATS and its president Braccio agreeing to supply TPT with digital controls, specifically IDECs, under a Vendor Agreement, where TPT would own any modifications to the controls.  (Original Petition paragraphs 27-34).  Paragraph 41 of the Original Petition made it clear that TPT was the sole owner of all "integration information" and made reference to the Vendor Agreement's provisions in footnote 6 citing Art. XII of that agreement that TPT shall own all intellectual property which shall be defined as:  "All confidential or proprietary information, inventions, ideas, trade secrets, data, materials, know-how, patents, design patents, patent and design applications, registered designs, *copyrights*, schematics, engineering drawings and all similar rights." Paragraph 62 of the Original Petition stated that the defendants had illegally appropriated the "intellectual property derived from *modifications to engine controls software* sold by TES and ATS to TPT under the Vendor Agreement."  The prayer of the Original Petition asked for injunctive relief as previously noted.  These allegations were echoed in the Application for Temporary Restraining Order and Preliminary Injunction which was served along with the original complaint.  Paragraph 3 of that Application alleged that ATS sold and TPT purchased the industrial digital controls under the Vendor Agreement and again by footnote reproduced Section XII of the Vendor Agreement which showed that the intellectual property included "copyrights".  Paragraph 7 of that application also alleged that TPT's "engine controls data" was to be used in the digital controls even if ATS had to hire "software engineering consultants" to complete that task.  The remainder of the

41

application contains multiple allegations about the use of the digital controls and that TPT owned the data for those controls. Like the Original Petition, the prayer for the application included the request for injunctive relief relating to "software" for turbine engine controls and to enjoin any "copying" or "use" of "related computer programs." A TRO was then issued by the state court enjoining such uses. This was followed by the granting of a Preliminary Injunction on January 5, 2017 prohibiting the same conduct. Like the _XIP, LLC_ case, it is clear that defendants should have been on notice of potential copyright issues from the outset.

Any alleged second 30 day window has also long expired. It is telling that when defendants filed their Complaint in this Court in Civil Action No. 17-0386 on March 13, 2017, they specifically discussed patents and that if a patent was involved then it was for the control of "multiple variants of gas turbine engines without requiring a change in software and configuration data." (Plaintiff's Complaint at paragraph 22). In differentiating their technology from TPT's, the defendants alleged in paragraph 42 that their technology was limited to "one engine and that engine's parameters which is "hard coded into its DEC software." In order to differentiate their technology, it is clear that the defendants must have understood that computer software was at the heart of TPT's claims. In response to that Complaint, TPT filed its Answer and re-alleged all its allegations that had been filed in state court, including all of the requests for injunctive relief; which would have been the second time defendants had been served with those pleadings. A second "30 day window" would have started then.

TPT then filed an Amended Petition for Damages on May 23, 2017 making the same allegations as it had in its Original Petition and Application for Injunctive Relief, including the footnote reproducing Section XII of the Vendor Agreement which

referenced "copyrights"; the third time the allegations were served on the defendants and a third time a "30 day window" would start.

Even more telling is the statement of defendants' counsel that at the June 15, 2017 hearing on defendants' Motion to Dissolve Preliminary Injunction that the case "did not involve copyrights". This is eerily similar to the removing defendants' statement in *XIP, LLC* that "to the extent plaintiff is asserting a copyright claim, this court does not jurisdiction to decide the claim since it would constitute a federal question." *Id.* at p. 9. The court found that just the mere reference to the possibility of a copyright claim was enough for the defendants to be on notice that such potential claims were possible. The *XIP, LLC* court found that these references indicated a "consciousness on their part of the *potential* that plaintiff was asserting a copyright claim." *Id.* (Emphasis added). There can be no doubt that the source code and embedded data in that source code was central to TPT's claims from the beginning and certainly after the June 15, 2017 hearing. As noted by this Court in *Turbine I*:

> When questioned as to the identity of the intellectual property that Defendants allegedly misappropriated if it was not a patent, McIntyre responded, "controlling the turbine engine for hydraulic fracturing power generation...It's all the embedded technology in the software. The source code and the hardware designed, that we paid for, that we own that is used for hydraulic fracturing using turbine engines."

*Turbine I* at p. 24.

That information was known to the defendants prior to their first removal on August 29, 2017 (Civil Action 17-0801). The defendants cited 28 USC § 1454 as a basis for removal, then alleging only removal based on patent issues, but clearly the same statute includes "copyrights" as counsel knew that by their comments at the June 15, 2017 hearing.

Also it makes no sense to allow defendants to remove the case based on an alleged "equivalent copyright" allegation where the entire thrust of their defense in this case is that TPT has no trade secrets and that anything that they claim is a trade secret is in the public domain. As noted in *XIP, LLC*, the removing defendants were not asking the court to find that there was a copyright question present in the action, instead they were essentially asking the court to find that there was "no copyright question" in the action. 2015 U.S. Dist. Lexis 149174 at p. 13. The court stated that the defendants relying upon a "copyright" counter-claim as the basis to remove an action to federal court, "after pursuing the action in state court for two years, solely for the court to find that there is no copyright infringement does not comport with the federalism concerns behind removal." *Id.* ATS and Braccio have not yet filed a copyright counter-claim in this case, however the effect of their removal is the same. They are trying to assert "equivalency" arguments to copyright just so that they can remove the case to federal court and then try to prove that TPT had no trade secrets and thus no copyright claim. This sort of inverse logic is exactly the type of situation that would defeat the law concerning limited removal and the policy behind removal time limits. This the court cannot allow.

Another representative case is *Hill Country Trust v. Silverberg*, 2018 U.S. Dist. Lexis 22359 (W.D. Tex. 11/26/18). That case actually involved copyright issues. The main issue, however, was the timeliness of the defendant's removal from state court. Plaintiff had filed suit in Texas state court on April 24, 2018 regarding the ownership of software between it and the defendant, along with claims of breach of fiduciary duties and conversion. The defendant filed an Answer and Counter-Claim on May 21, 2018 alleging that the plaintiff's claims "have cast a cloud over the ownership of the software" among other things. The plaintiff moved for temporary injunction and a full hearing was

conducted on May 29, 2018.  At the hearing the defendant discussed the issue of the software and its ownership.  The next day, on May 30, the court entered a temporary injunction prohibiting the defendant from further using plaintiff's "trade secrets, including the Software".  _Id._ at p. 4-5.  The plaintiff and defendant then exchanged discovery in June, 2018 discussing the software.  The plaintiff filed an Answer to the Counter-Claim on July 11, 2018 also seeking a declaratory judgment that it owned the software. _Id._ at p. 5-6.  The defendant removed the case on July 27, 2018 based on federal question jurisdiction under the Copyright Act.  Plaintiff moved to remand on August 13, 2018.  One of the central issues was the timeliness of the removal.  In construing that issue, the court looked to the "face of the pleading to determine whether it includes a claim from which the defendant could ascertain the case as removable." _Id._ at p. 18.  It noted that the face of the plaintiff's pleading only "included state law claims for breach of fiduciary duty, conversion of improper expenses, conversion of software, breach of the company agreement and misappropriation of trade secrets rather than explicitly bringing a copyright claim." _Id._ at p. 19.  The court noted that the question before it was "whether a defendant could ascertain that the case was removable based on the information contained within the pleading." _Id._

The court found that the defendant could have ascertained that the case was removable from the face of the plaintiff's original Petition. _Id._  In that Petition, the plaintiffs alleged that the defendant "represented that the Software would be owned by" plaintiff and that the "Software is rightfully owned by" plaintiff. Because the software was at issue, the court found that the defendant "could have ascertained the copyright issue based on the pleading." _Id._ at p. 20.  The court further noted that the defendant had exchanged discovery and one interrogatory asked the defendant to "describe the legal and

factual basis for your contention that you own the Software." Again, there was no express reference to copyrights. In response the defendant represented that he owned the software because "he is the sole author of the software". The court found that the response indicated that the defendant was aware that he could have asserted a copyright claim based on the plaintiff's earlier filings. *Id.* at p. 22. The court held that the defendant had missed the 30 day window for removal. *Id.*

Once again, based upon the facts before this Court, it is clear that ATS and Braccio had more than sufficient information with which to be on notice of a potential copyright claim that they are now asserting. The initial 30 day window has long expired.

Both *Hill Country* and *XIP, LLC* stand for the proposition that alleged "other papers" arising after the plaintiff's original pleadings which merely confirm or explain or "make clear" an original pleading is not sufficient new information with which to start the second 30 day window running. If there was to be a second 30 day window in this case, it would definitely have been on June 15, 2017 at the hearing on the Motion to Dissolve the Preliminary Injunction in state court. Counsel made reference to potential copyright claims and Mr. McIntyre made it abundantly clear at that hearing that TPT's claims involved the "embedded technology in the software" and the "source code" that TPT paid for and owned. Regardless of any "new information" now proffered by the defendants, the 30 day windows for removal have long been closed.

### b.   28 USC § 1454(b)(2)

Pretermitting for the moment whether or not true copyright jurisdiction exists in this case, defendants have raised the issue of extending the deadline for removal under 28 USC § 1454(b)(2). Defendants argue in their Notice of Removal that even if the removal is untimely, the Court should extend the time for removal for "cause shown". The

defendants do not articulate any specific "cause" in their Notice.

Defendants may not use § 1454 as a "jurisdictional sword, with which they may gain a tactical advantage over their adversary." *XIP, LLC* at p. 11; *University of Kentucky Research Foundation, Inc. v. Niadyne, Inc.*, 2013 U.S. Dist. Lexis 158018 (E.D. Ky. 11/5/13) at p. 10. "One of the purposes of the timing provisions of §1446 and 1454 is to limit the ability of the Defendant to test the waters in one forum, and finding them inhospitable, move to another forum that might be more sympathetic to its views." *Id.*; *citing, Andrews v. Daughtry*, 994 F. Supp. 2d 728, 735 (MDNC 2014). "Cause shown" cannot simply be that the removing party has asserted a patent or copyright claim and that federal courts are the exclusive forums for such claims. *Hill Country* at p. 23 *citing*, *Niadyne*.

Few District Courts have considered what constitutes "cause shown" under the statute. Those that have considered the issue have concluded at a minimum that the standard imposes some burden on the removing party to justify why its tardiness should be excused. *Daughtry*, 994 F. Supp. 2d at 734; *Niadyne*, *supra*; *SnoWizard, Inc. v. Andrews*, 2013 U.S. District Lexis 97589 (E.D. La. 7/12/13) at p. 6. In analyzing whether a removing party has shown cause, some courts have looked to FRCP 6(b)(1)(B) regarding the extension of deadlines. *Hill Country* at p. 23. District Courts have "broad discretion to grant or deny an extension." *Salts v. Epps*, 636 F. 3d 468, 474 (5th Cir. 2012). Factors relevant to a determination of "excusable neglect" for "cause" include: (1) the possibility of prejudice to the other parties, (2) the length of the applicant's delay and its impact on the proceeding, (3) the reason for the delay and whether it was within the control of the movant, and (4) whether the movant has acted in good faith. *Hill Country* at p. 23-24.

In this case there has been prejudice to TPT. The parties had a trial date of

November 9, 2020 after years of procedural gymnastics by the defendants that have caused innumerable delays.  When defendants removed this case for the third time, the parties had been in the process of scheduling depositions to start on September 10, 2020.  They had produced over 30,000 pages of documents in written discovery.  Numerous motions and appeals have been filed in state court and taken to the state appellate courts, including the Louisiana Supreme Court.  There is parallel litigation in Arizona in the bankruptcy court because of the Chapter 11 and subsequent Chapter 7 filings of defendants Crowe and AZT.  The November 9, 2020 trial date would have placed TPT's state court claims on track to be determined prior to any of the claims on the merits in Arizona.  That preferential placement has now been lost.  Defendants' bad faith has also been shown by the fact that they have delayed discovery in state court necessitating the filing of Motions to Compel and two Motions for Contempt.  Counsel for defendants at the time of the first removal was also publicly reprimanded by the District Court for actions taken at that time.

Cause has been denied on the basis of delay where the underlying state court case had been active.  In _Niadyne_, 2013 U.S. Dist. Lexis 158018, the court found that a nine (9) month delay in filing the removal because patents were involved was insufficient to find cause.  _Id._ at p. 10.  Similarly in _Daughtry_, 994 F. Supp. 2d at 73-74, the court found no cause for a three (3) month delay where the counter-claimant actively engaged in state court litigation by serving discovery requests, petitioning the state court for transfer and filing a Motion to Dismiss.  In _Hill Country_, the court noted that the defendants did not remove the case until two months after the 30 day deadline expired and during that time the defendants had filed a Motion to Transfer Venue, a Motion to Enforce the Parties' Rule 11 Agreement, to Dismiss the Case, file an Answer to plaintiff's Original Petition,

contested plaintiff's request for injunctive relief, filed an Amended Answer and participated in discovery. _Id._ at p. 25-26. In short the court noted that the defendant was an active participant in the state court litigation between the filing of plaintiff's Original Petition and the Notice of Removal. Cause was not shown under those circumstances. _Id._ at p. 27. Based upon those cases, their parameters, and the extensive state court history of this case, it is a foregone conclusion that defendants cannot show "cause" sufficient to extend the deadline in this case under § 1454.

## NO FEDERAL QUESTION

The Court need not reach the issue of jurisdiction given the improper multiple removals and untimeliness of this third removal by the defendants. If the Court is inclined to do so, however, TPT outlines its argument on jurisdiction in summary fashion as follows:

It is axiomatic that to qualify for copyright protection, a work must be original to the author, independently created by the author and possess at least some minimal degree of creativity. _Feist Publications, Inc. v. Rural Telephone Service Company_, 499 U.S. 340, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991). "Facts, whether alone or as part of a compilation, are not original and therefore may not be copyrighted. _Id._ at p. 350. Facts in compilations and listings, without any artistic originality, do not fall under copyright protection. _Id._ at p. 364." With regard to computer programs, bare ideas, processes and facts themselves embedded therein are not protectable. _Gates Rubber Co. v. Bando Chem. Indus._, 9 F 3d 823 (10th Cir. 1993).

It is undisputed that TES has a copyright for its source code. This is clearly printed on the first page of each module of source code that has been reduced to printed form and produced in this case. (**Exhibit P-6 Under Seal**). In the settlement agreement between

49

TES and TPT referenced in Defendants' Requests for Admissions in February, 2019, it was specifically delineated that TES owned the source code and that TPT owned the "tuning intellectual property" in the source code, made up of the data that TPT supplied for controlling turbine engines for hydraulic fracturing and power generation in oilfield applications.  Just because TES has a copyright does not mean that TPT has any right to enforce that copyright.  TPT has no registered copyrights.

Computer source code can have protectable portions and unprotectable portions under the Copyright Act.  9 F. 3d at 839.  Since "facts", "processes" and "discoveries" like the ones made by TPT with regard to the turbine powered oilfield equipment, are the types of information that could be protected under trade secrets statutes, by patents, or by contract, they do not necessarily fall under the copyright statutes.  9 F. 3d at 842-45.

In _Gates_, the lawsuit revolved the Design Flex Program for rubber products.  The court noted that "constants" in the program represented "scientific observations of physical relationships concerning the load that a particular belt can carry around certain size gears at certain speeds given the number of other variables."  9 F. 3d at 842-43. The court noted that these relationships "are not invented or created; they already exist and are merely observed, discovered and recorded.  Such a discovery does not give rise to copyright protection."  _Id._ at 843.

_Gates_ is instructive.  The type of information at issue in this case involving TPT's trade secrets, the "tuning intellectual property", is the type of factual data, processes and discoveries that are not subject to copyright protection.  The programming authored by TES may be subject to copyright protection, but the data supplied by TPT is separate.

Further, in order to impose liability for copyright infringement, a court "must find that the defendant copied protectable elements of the plaintiff's program and that those

50

protectable elements comprise a *substantial part* of the plaintiff's program when it is considered as a whole." 9 F. 3d at 833 (emphasis added); *Autoskill v. National Educational Support Systems, Inc.*, 994 F. 2d 1476, 1496-98 (10th Cir. 1993); *Brown Bag Software v. Symantec Corp.*, 960 F. 2d 1465, 1475-77 (9th Cir. 1992). In this case the defendants have relied on the bankruptcy court's recent decision to maintain that TPT's trade secrets have been "clarified". That decision describes TPT's trade secrets as 2-4% of TES' source code. For copyright purposes, it is submitted that such a small percentage is not a "substantial" part of the code.

Should defendants assert preemption arguments, it should be noted that state law claims are not preempted by the copyright act where that claim includes "any extra elements that make it qualitatively different from a copyright infringement claim." *Gates*, 9 F. 3d at 847; *Sleppin v. Thinkscan.com, LLC*, 55 F. Supp. 3d 366 (E.D. NY 2014), *citing*, *Briar Patch, Ltd., LP v. Phoenix Pictures, Inc.*, 373 F. 3d 296, 305-06 (2d Cir. 2004). A state law claim is qualitatively different if it requires elements such as a "breach of trust or confidence" or a "breach of fiduciary duty". *Id.* Courts have held that a number of state law claims can arise in connection with instances of copyright infringement and are not preempted by the copyright act because they have extra elements added to them, these include unfair competition claims, claims based on breaches of confidential relationships, breaches of fiduciary duties and trade secrets. *Computer Associates International, Inc. v. Altai, Inc.*, 982 F. 2d 693, 717 (2d Cir. 1992). Breach of contract claims also do not fall under copyright preemption. *Acorne Products, LLC v. Tjeknavorian*, 33 F. Supp. 3d 175, 182-83 (E.D. NY 2014).

In this case TPT has claimed misappropriation of trade secrets, unfair trade practices, breach of contract with ATS and breach of employment contract and breach of

51

fiduciary duty with Braccio.  At a minimum, those claims are separate from copyright claims and do not fall under preemption.

TPT has alleged only state law claims all of which have extra elements besides the taking of the information in the source code at issue in this case.  Accordingly, federal jurisdiction under the Copyright Act does not exist and defendants' third removal must fail for lack of subject matter jurisdiction.[16]

Respectfully submitted:

THE PANAGIOTIS FIRM

*s/D.C. Panagiotis*

D.C. PANAGIOTIS (#15032)
1540 W. Pinhook Rd.
Lafayette, LA 70503
(337) 264-1516
dan@panalaw.com
**Counsel for TPT**

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of August, 2020, a copy of the foregoing was filed electronically with the Clerk of court using the CM/ECF system.

*s/D.C. Panagiotis*

D.C. PANAGIOTIS

---

[16] TPT has moved for attorney's fees and costs in their Motion to Remand.  The main ground is that defendants had no reasonable basis to remove this case under "copyright equivalency" given the facts and the references and admissions of their counsel.  Should the Court agree, then TPT requests that it be allowed to brief the issue and submit evidence of fees and costs.