UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **Turbine Powered Technology LLC** | **Civil Action No. 6:20-cv-00986** |
| **versus** | **Judge Michael J Juneau** |
| **Crowe et al** | **Magistrate Judge Whitehurst** |

### AMENDED[1] REPORT AND RECOMMENDATION

Before the undersigned by referral from the district judge is Plaintiff, Turbine Powered Technology LLC's ("TPT"), Motion To Remand And For Attorney's Fees And Cost [Rec. Docs. 9], an Opposition Memorandum filed by Defendants Advanced Turbine Services, LLC ("ATS") and Kenneth Braccio ("Braccio") (collectively "Defendants") [Rec. Doc. 22] and a Reply thereto [Rec. Doc. 30]. Based on the foregoing and the evidence in the record, the undersigned recommends that the motion to remand be granted and the motion for attorney's fees be denied

### *I. BACKGROUND*

This motion to remand filed by TPT represents the third time the defendants have removed this case from state court. The Court will not repeat the entire factual and procedural background of the case. Instead the Court will confine this discussion to the salient facts necessary to understand and resolve the instant motion.

TPT through its owner and principal, Ted McIntyre, contends it holds

---

[1] The Court's amendment addresses only the motion for attorney's fees and costs. *PP. 1 & 13*.

1

exclusive intellectual property ownership over the process of controlling turbine engines to power hydraulic fracturing in the oil and gas industry. In March 2012, TPT entered into a Vender Agreement with ATS, a turbine engine company, (the "VA"), for ATS to sell remanufactured turbine engines and digital engine controls known as "FADEC"[2] or "iDec."[3] The VA expressly provided: "With respect to all changes or modifications paid for and/ or funded by TPT under this Agreement, TPT shall own all 'Intellectual Property'." *R. 17-1, Original Petition, ¶ 41*. ATS introduced TPT to Tucson Embedded Systems ("TES") through TES's founder and then-President, David Crowe, from whom ATS procured the digital engine controls and resold to TPT. In order to use the engines supplied by ATS, TPT contracted with TES, to provide services for "engineering development consulting". *R. 1-3 Amended Petition, ¶ 37*. "Defendants [] Crowe and [] Braccio (as a principal and manager of ATS) each had knowledge of this relationship and were subject to the confidentiality, non-disclosure and other requirements of the [VA]." *Id. at ¶ 33*. In 2013, Braccio became involved with TPT to oversee TPT's development of its own turbine engine manufacturing program. Braccio's employment with TPT ended in March 2014, following the downturn in the oil and gas industry.

In 2014, after joint venture negotiations failed between TPT/McIntyre and

---

[2] "Fully Authorized Digital Electronic Control"
[3] "Industrial Digital Electronic Control"

TES/Crowe, TES sued TPT in federal court in Arizona alleging TPT left unpaid invoices on work performed adapting the iDec for TPT's turbine engines used in the power generation units. *See Tucson Embedded Systems, Inc. v. Turbine Powered Technology, LLC*, 2016 WL 1408347 (D. Ariz. Apr. 11, 2016). TPT counterclaimed alleging trade secret violations related to the digital controllers used in the project. The Arizona court granted TES's partial motion for summary judgment dismissing TPT's trade secret claim against it because TPT "failed to provide enough detail about the alleged trade secrets for TES or [the] Court to adequately discern what might be legally protectable."[4] *Id.* TES settled the case with TPT in October 2016. As part of the confidential settlement agreement, TES assigned to TPT interests in various patents regarding digital control technology and agreed that TPT owns "intellectual property with regard to tuning the iDec." *R. 22-3, pp. 2-3* (sealed).

Prior to this settlement, Crowe left TES and ultimately formed his own company, Arizona Turbine Technology, Inc. ("Arizona Turbine"), in order to develop and sell products and services to support digital engine controls for turbine engines in fracking and power generation equipment. Arizona Turbine became a competitor of TPT.

---

[4] TPT identified its trade secrets as "a compilation consisting of the parameters and settings, including timing, temperatures, flow rates, horsepower settings, pressures, warning protocols, and shutdown protocols, necessary to make a T-53 engine run on field gas drive a one megawatt (1 mw) generator in oil and gas industry applications in remote locations where personnel cannot be constantly on sight monitoring it to prevent catastrophic failures."

The Petition initiating this action was originally filed by TPT on November 7, 2016, in the 16th Judicial District Court for the Parish of St. Mary, State of Louisiana, Docket No. 130379-F ("State Court Case"). TPT named as defendants Arizona Turbine, Crowe, ATS and Braccio, *inter alia*.[5] TPT claimed exclusive intellectual property ownership over the process of controlling turbine engines to power hydraulic fracturing in the oil and gas industry. The petition set forth multiple causes of action under Louisiana law related to TPT's "sole owner[ship] of the intellectual property created by modifications to the engine controllers" at issue. *R. 17-1, Original Petition, ¶ 44*. No federal claims were alleged. The petition also contained an Application for TRO and Preliminary Injunction against Defendants. The state court granted the TRO and Preliminary Injunction. Defendants filed a motion to dissolve the preliminary injunction and the court conducted a hearing during which McIntyre testified and discussed the patents it acquired in the TES settlement.

Thereafter, the defendants filed a Notice of Removal to this Court based on federal question, specifically patent law. *See Civil Action No. 17-cv-00810*. The defendants contended that TPT's lawsuit was based on technology contained in the TES patents. In its ruling remanding this case to state court, the Court found that the pleadings and evidence in the case did not implicate any issue of federal patent law.

---

[5] TPT also named other defendants claiming they aided and abetted the listed defendants. *Id.* at *6.

In April 2019, after Crowe filed for Chapter 11 bankruptcy in Arizona, Defendants filed a second notice of removal. The removal was based on the grounds that the state claims were related to Crowe's bankruptcy matter and this case should be transferred to the judicial district of the bankruptcy court. *See Civil Action No. 19-cv-00475*. TPT filed a Motion to Remand and the Court remanded based on equitable grounds under 28 U.S.C. § 1452(b).

The defendants appealed the state court's denial of its motion to dissolve the Preliminary Injunction before the second removal and subsequent remand. A week after the second remand order was entered, the Louisiana First Circuit Court of Appeal issued its opinion reversing the state court's denial of the motion to dissolve the preliminary injunction. *Turbine Powered Technology, LLC v. Crowe*, 2019 WL 4201579 (La. App. 1 Cir. 9/5/19). The First Circuit held that TPT had not proven its entitlement to the injunctive relief.[6]

Thereafter, ATS and Braccio filed exceptions contending that TPT had not identified the specific confidential intellectual property forming the basis of its claims. As TPT had not answered discovery from 2019, in early 2020 they also propounded additional discovery to TPT. On July 14 and 15, 2020, TPT provided objections and responses to outstanding discovery. *R. 17-7, 17-8, 17-9*. In essence,

---

[6] The First Circuit stated that the trial court erred in dismissing defendants' motion to dissolve preliminary injunction based on the "failure of TPT to make a prima facie showing that it will prevail on the merits of any of its claims related to its alleged trade secrets." *Id.* at *13.

TPT stated that its trade secrets included its "tuning intellectual property," "testing data," "programming data," and "interface data" "such as incorporated into the TES iDec" and its "tuning intellectual property" is contained in and saved on the actual iDecs. *Id.* Later, on August 1, 2020, TPT supplemented its previous responses to ATS and Braccio's interrogatories with the Arizona Bankruptcy Court's opinion which stated that TPT's alleged trade secrets in that case and in the state case includes the "interface information, including operating and protective parameters, embedded into, and comprising 2-4% of, the iDec control's source code, developed in connection with the adaptation of the iDec to power hydraulic fracturing and pumping equipment applications." *R. 22-1, p. 19*. TPT stated that the bankruptcy court's ruling "denotes various descriptions and details of TPT's trade secrets," "concludes that TPT has sufficiently described its trade secrets in that litigation," and "describes modifications to the iDec engine controller at issue in this case." *Id. at p. 1*.

Later that day, August 4, 2020, Defendants removed this action under federal copyright law asserting that removal was triggered by "other paper" pursuant to § 1446(b)(3) when TPT "responded to long-outstanding discovery requests asking for specific information and details as to the nature of the claims against [Defendants]." *R. 1, p. 5*. Defendants stated, "TPT finally made clear that its claims rest on the allegation that the defendants have wrongfully copied, communicated, used, and

transmitted copyrighted computer source code developed to control the turbine engines in certain fracking and power generation units built by TPT, as well as the ideas, intellectual property, technical processes, and operational modules fixed in that source code that are allegedly owned by TPT." *Id.*

Defendants assert federal question jurisdiction pursuant to 28 U.S.C. § 1331. They contend that plaintiff's claims arise under the federal laws governing copyrights and the Court has subject matter jurisdiction over them because of complete copyright preemption. Thus, Defendants' removal is based on the ground that even though TPT did not plead any copyright claims, its claims were preempted by the Copyright Act, creating subject-matter jurisdiction in federal court.

## II. CONTENTIONS OF THE PARTIES

TPT contends that Defendants' removal based on its claims falling under Copyright law is prohibited because multiple removals on the same facts are not allowed. In the alternative, TPT contends that removal is untimely because the 30-day window for removal based on "other paper" began in December 2016, when Defendants were served with TPT's initial pleadings referencing software, computer programs and the request they be enjoined from using software and/or hardware for industrial turbine engines, and from copying digital engine controls. Finally, TPT asserts that its "tuning intellectual property" is not subject to copyright protection; but even if it is, it does not compose a "substantial part" of TES's protected copyright

to also be protected under copyright.

Defendants contend this Court has federal question jurisdiction pursuant to the U.S. Copyright Act which preempts at least some if not all of TPT's claims. They argue TPT filed suit and obtained an improper preliminary injunction without specifying what was the alleged intellectual property at issue. They maintain that McIntyre never mentioned "software, the iDec, the iDec's source code" or engine "tuning data" fixed in the source code. Defendants assert that they did not nor could not have known of the Copyrighted IP until TPT provided responses to the outstanding 2019 and 2020 discovery requests on July 14 and 15, 2020 and TPT's submission of the Arizona Bankruptcy Court's opinion on August 1, 2020.

### III. REMOVAL STANDARD

Section 1446 requires that "notice of removal of a civil action ... shall be filed within 30 days after the receipt by the defendant ... of a copy of the initial pleading setting forth the claim for relief upon which such action ... is based." 28 U.S.C. § 1446(b)(1). If removal is not proper based on the initial pleading, "a notice of removal may be filed within 30 days after receipt by the defendant ... of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). This requires, as the plain language suggests, information contained in a writing. *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 609 (5th Cir. 2018).

Section 1446 thus "presumes and reinforces a procedural dynamic whereby a plaintiff controls the forum with his pleadings, and a defendant may only remove a case once the plaintiff has introduced into the case some document from which the defendant may ascertain the case is removable." *Donahue v. Tokyo Electron America, Inc.*, 2014 WL 12479285, at *4 (W.D.Tex., 2014); *see also Mumfrey v. CVS Pharm., Inc.*, 719 F.3d 392, 397–98 (5th Cir. 2013).

### IV. LAW AND ANALYSIS

Defendants assert federal question jurisdiction pursuant to 28 U.S.C. § 1331 contending that TPT's claims are preempted by Copyright law. After laboriously reviewing both sides' arguments and the extensive record, the Court finds it does not need to resolve the jurisdiction issue because, even if subject matter jurisdiction exists, the action should be remanded based on untimely removal.

Defendants argue they are within the thirty-day time period for removal because TPT first put them on notice that this case might be removable on July 14 and 15, 2020, when TPT provided objections and responses to outstanding discovery. They contend there was no doubt as to the grounds for this removal on August 1, 2020, when TPT supplemented its responses with the Arizona Bankruptcy Court's opinion. Defendants claim that these documents provided "new affirmative statements and specific descriptions by TPT of the intellectual property at issue," and was the first time they had notice that TPT's state law claims are preempted by

copyright law.

Defendants' claim that the aforesaid production of documents was the first times they were put on notice that "TPT's tuning intellectual property ... as incorporated into the TES iDec…." was at issue in this case is not supported by the record. Starting with TPT's Original Petition filed on November 7, 2016, TPT has consistently alleged that ATS and Braccio agreed to supply digital controls and iDecs under the VA, wherein TPT would own any modifications to the controls. TPT's Petition stated that, pursuant to the Article XII of the VA, "TPT shall own all "Intellectual Property", *R. 17-1, Original Petition. p. 8 ¶ 41*. The Petition also stated that "Intellectual Property" was defined in the VA as "All confidential or proprietary information, inventions, . . . , **copyrights**, schematics, engineering drawings and all similar rights." *Id. at fn 6 quoting VA Article VII (3) at p. 13.* Further quoting the VA, the Petition stated that ATS was not responsible for any modifications to the digital engine controller and alleged that Defendants had "illegally appropriated the intellectual property derived from modifications to engine controls software sold by TES and ATS to TPT under the Vendor Agreement." *Id. at p. 12, ¶ 62*. The Application for Temporary Restraining Order and Preliminary Injunction served with the Original Petition reiterated the aforesaid allegations. Moreover, those documents prohibited Defendants from "copying ... the digital engine controls" related to software at issue in this case. *R. 17-1, p. 32, ¶154 (c)*. TPT later filed an

Amended Petition for Damages making the same allegations as it had in its Original Petition and Application for Injunctive relief. *R. 17-2, p. 171.*

Finally, TPT argues ATS and Braccio's claim that they had no notice of any potential issues involving computer code, digital controls and software which are allegedly copyrightable before July 2020, is disingenuous. It is undisputed that Braccio and ATS shared counsel with Crowe and Arizona Turbine from the initiation of the state lawsuit through September of 2019. All the knowledge and information gained by their joint counsel, including that in the litigation filed in Arizona, is imputed to all Defendants.[7] *See Perez v. Stephens*, 784 F.3d 276, 283 (5th Cir. 2015) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 397 (1993) ("each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney"); *CFP New Orleans, LLC v. Orleans Parish Judicial District Court Building Commission*, 2017 WL 3917108, at *4 (E.D.La., 2017) (The knowledge of an attorney is imputed to his client).

For the reasons stated above, the Court concludes that ATS and Braccio had notice of issues pertaining to computer software and source codes from the

---

[7] In particular, the Court notes that TPT counterclaimed TES in the Arizona case filed by TES, alleging trade secret violations in the source code for the digital turbine controllers used in the project. *Tucson Embedded Systems, Inc. v. Turbine Powered Technology, LLC*, 2016 WL 1408347 (D. Ariz. Apr. 11, 2016).

11

beginning of the parties' relationships and that potential copyright claims could be involved. Therefore, the removal of this action was not timely.

### *V. CONCLUSION*

For the reasons provided in the foregoing, the Court recommends that this action be remanded to the 16th Judicial District Court, Parish of West St. Mary. The Court further recommends that the motion for attorney's fees and costs be denied.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** this 19th day of November, 2020.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE